IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| Naftali Schmelczer, individually and on behalf of all others similarily situated, | : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | NO. 7:20-cv-02380-KMK |
| Penn Credit Corporation, | : : | |
| Defendant. | : : : | |

**DEFENDANT PENN CREDIT CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF NAFTALI SCHMELCZER'S <u>CLASS ACTION COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)</u>**

In this case, Plaintiff, Naftali Schmelczer ("Plaintiff") invites this Court to create liability under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), over an innocuous debt collection letter. Defendant, Penn Credit Corporation ("Defendant" or "Penn Credit"), by its undersigned counsel, thus moves this Court for an Order dismissing Plaintiff's Class Action Complaint ("Complaint") with prejudice for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). For all of the reasons expressed below, this Court should grant Penn Credit's Motion to Dismiss, and reject Plaintiff's attempt to state a claim under the FDCPA.

**TABLE OF CONTENTS**

I.    INTRODUCTION. ............................................................................................................... 4

II.    STATEMENT OF FACTS ................................................................................................ 4

III.    LEGAL ARGUMENT ..................................................................................................... 6

   A.    Standard of Review ...................................................................................................... 6

   B.    This Court May Consider the Envelopes with the Letter, as the Envelopes are Integral to the Complaint. ........................................................................................................................ 8

   C.    The Purpose of the FDCPA and the Least Sophisticated Consumer Standard. ................... 9

   D.    The Letter Does Not Violate the FDCPA as a Matter of Law. Thus, Penn Credit's Motion to Dismiss Should be Granted. ................................................................................................ 10

IV.    CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 7, 15
*Bell Atl. Corp. v. Twombly*, 550 U.S. 570 (2007) .................................................................. 7, 15
*Braun v. Client Servs.*, 14 F. Supp. 3d 391 (S.D.N.Y. Mar. 31, 2014) ...................................... 6, 7
*Campagna v. Client Servs.*, No. 18-cv-3039, 2019 U.S. Dist. LEXIS 208164 (E.D.N.Y. Dec. 3, 2019) .................................................................................................................................. 16
*Carbone v. Caliber Home Loans, Inc.*, No. 15-cv-4919, 2016 U.S. Dist. LEXIS 138433 (E.D.N.Y. Sept. 30, 2016) ................................................................................................ 11, 12
*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) ............................................................. 9, 10, 16
*Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130 (2d Cir. 2010) ....................................... 9, 10, 16
*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994) ................................. 7
*Ghulyani v. Stephens & Michaels Associates, Inc.*, 2015 U.S. Dist. LEXIS 145424 (S.D.N.Y. Oct. 26, 2015) ...................................................................................................................... 16
*Greco v. Trauner, Cohen, & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005) ................................. 9
*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001) ........................................................................ 7, 8
*Koehn v. Delta Outsource Grp.*, No. 18-c-1084, 2018 U.S. Dist. LEXIS 210759 (E.D. Wis. Dec. 14, 2018) ............................................................................................................................. 10, 16
*Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002) ..................................................................... 9
*Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 236 (2d Cir. 1998) .......................................... 9
*McStay v. I.C. Sys., Inc.*, 308 F.3d 188 (2d Cir. 2002) .......................................................... 10, 16
*Ocampo v. Client Servs.*, No. 18-cv-4326, 2019 U.S. Dist. LEXIS 111819 (E.D.N.Y. July 3, 2019) .............................................................................................................................. 16, 17
*Park v. Forster & Garbus, LLP*, No. 19-cv-3621, 2019 U.S. Dist. LEXIS 196003 (E.D.N.Y. Nov. 12, 2019) ......................................................................................................... 4, 10, 12, 13
*Pinyuk v. Cbe Grp.*, No. 17-cv-5753, 2019 U.S. Dist. LEXIS 71899 (E.D.N.Y. Apr. 29, 2019) 17, 18
*Sanderson v. Roethenmund*, 682 F. Supp. 205 n.8 (S.D.N.Y. Mar. 22, 1998) ............................... 7
*Saraci v. Convergent Outsourcing, Inc.*, No. 18-cv-6505, 2019 U.S. Dist. LEXIS 36228 (E.D.N.Y. Mar. 6, 2019) ................................................................... 4, 10, 11, 12, 14, 15, 17
*Schnall v. Marine Midland Bank*, 225 F.3d 263 (2d Cir. 2000) .................................................. 7, 8
*Scutti Enterprises v. Park Place Entertainment Corp.*, 322 F.3d 211 (2d Cir. 2003) .................... 6
*Smart v. Goord*, 441 F. Supp. 2d 631 (S.D.N.Y. July 27, 2006) ................................................ 7, 8

**Statutes**

15 U.S.C. § 1692(e) ....................................................................................................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 6, 19

## I.   INTRODUCTION

Plaintiff filed her Complaint on March 18, 2020, alleging multiple violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"). Plaintiff's allegations concern a June 19, 2019 collection letter, which contains Penn Credit's address, Plaintiff's address, and an unaffiliated address for return-mail. Plaintiff alleges that the letter's multiple addresses violate the FDCPA because they are confusing and misleading to the least sophisticated consumer in various ways. The letter, however, cannot reasonably be interpreted as misleading to the least sophisticated consumer, and the mere inclusion of multiple addresses, without more, does not amount to an FDCPA violation. *See Saraci v. Convergent Outsourcing, Inc.*, No. 18-cv-6505, 2019 U.S. Dist. LEXIS 36228, at *7 (E.D.N.Y. Mar. 6, 2019); *see also Park v. Forster & Garbus, LLP*, No. 19-cv-3621, 2019 U.S. Dist. LEXIS 196003 (E.D.N.Y. Nov. 12, 2019).

## II.   STATEMENT OF FACTS

Plaintiff initiated this action on March 18, 2020 with the filing of her Complaint. (Doc. 1; Exhibit 1). Plaintiff's allegations stem from a June 19, 2019 collection letter ("the Letter") sent to Plaintiff. (Doc. 1 at ¶ 27; Doc. 1-1; Exhibit 2). The Letter contains, among other things, Plaintiff's name and address, Penn Credit's name, hours of operation, and contact information, information regarding the creditor, Plaintiff's account identification number, the total balance owed, and further information related to Plaintiff's obligation. (Doc. 1-1; Exhibit 2). The bottom portion of the Letter consists of a detachable payment slip just beneath the following text: "DETACH AND RETURN WITH PAYMENT TO EXPEDITE CREDIT TO YOUR ACCOUNT." (Doc. 1-1; Exhibit 2). Two addresses appear at the bottom of the Letter on the Letter's detachable payment slip. (Doc. 1-1; Exhibit 2). The address toward the bottom right-hand corner of the payment slip indicates Penn Credit's address: "PENN CREDIT PO Box 69703 Harrisburg, PA 17106-9703."

(Doc. 1-1; Exhibit 2) (emphasis in original). The address in the top left-hand corner of the payment slip, the area traditionally reserved for a return-mail address, contains the return-mail address for the Letter: "P.O. Box 1259, Department 91047 Oaks, PA 19456." (Doc. 1-1; Exhibit 2). Penn Credit's name is not associated anywhere near the vicinity of the return-mail address. (Doc. 1-1; Exhibit 2).

Two separate envelopes accompanied the Letter that Plaintiff complains of: a mailing envelope and a return envelope. True and correct exemplars of the mailing envelope and the return envelope are annexed hereto as Exhibit 3 and Exhibit 4, respectively. (Exhibits 3-4). The Letter explicitly references the return envelope: "Send payment using the enclosed envelope . . . ." (Doc. 1-1; Exhibit 2). The mailing envelope contains two glassine windows on the left-hand side. (Exhibit 3 at p. 1). When the Letter is folded business style and placed in the mailing envelope, Plaintiff's name and address is displayed along with the return-mail address. (Exhibit 3 at p. 2). The return envelope contains one glassine window on the right-hand side. (Exhibit 4 at p. 1). When the detachable payment slip is placed in the return envelope, Penn Credit's name and address is displayed. (Exhibit 4 at p. 2).

In her Complaint, Plaintiff alleges the Letter violates Sections 1692g, 1692e, and 1692e(10) of the FDCPA. (Doc. 1 at ¶¶ 35-111; Exhibit 1 at ¶¶ 35-111). The gravamen of Plaintiff's Complaint centers on the Letter's multiple addresses. (Doc. 1 at ¶¶ 35-111; Exhibit 1 at ¶¶ 35-111). Specifically, Plaintiff claims that the Letter violates the FDCPA because its multiple addresses would allegedly confuse the least sophisticated consumer and leave her uncertain as to where to send a written debt dispute. (Doc. 1 at ¶¶ 47-54; Exhibit 1 at ¶¶ 47-54). Plaintiff claims the Letter discourages the least sophisticated consumer from exercising her statutory dispute and validation rights. (Doc. 1 at ¶ 56; Exhibit 1 at ¶ 56). Plaintiff also claims that the least sophisticated

consumer would be confused as to where to mail a request for the name of the original creditor. (Doc. 1 at ¶ 58; Exhibit 1 at ¶ 58).

Further, Plaintiff claims that the Letter's multiple addresses overshadow her validation rights under Section 1692g of the FDCPA. (Doc. 1 at ¶ 66; Exhibit 1 at ¶ 66). Plaintiff also claims the Letter fails to indicate which address the consumer should use in order to submit her payment in violation of Sections 1692e and 1692e(10) of the FDCPA. (Doc. 1 at ¶¶ 90-111; Exhibit 1 at ¶¶ 90-111). Plaintiff also alleges the Letter violates the FDCPA because the least sophisticated consumer would be unsure of which address to use to accept the settlement offer. (Doc. 1 at ¶¶ 100, 104, 106; Exhibit 1 at ¶¶ 100, 104, 106). The Letter, however, contains no settlement offer. (Doc. 1-1; Exhibit 2). Lastly, upon these allegations, Plaintiff brings class-wide claims. (Doc. 1 at ¶¶ 112-118; Exhibit 2 at ¶¶ 112-118).

All of Plaintiff's arguments necessarily fail, however, because the Letter is not confusing or misleading to the least sophisticated consumer, and the mere inclusion of multiple addresses in a collection letter does not violate the FDCPA. Thus, Penn Credit now files the instant Motion to Dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

## III.   LEGAL ARGUMENT

### A.   Standard of Review

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In deciding motions to dismiss under the Fed. R. Civ. P. 12(b)(6) standard, the court must accept as true all the factual allegations contained in the complaint. *See Braun v. Client Servs.*, 14 F. Supp. 3d 391, 394 (S.D.N.Y. Mar. 31, 2014); *see also Scutti Enterprises v. Park Place Entertainment Corp.*, 322 F.3d 211, 214 (2d Cir. 2003)). "[A] complaint's factual allegations must be enough to raise a right to relief above the

6

speculative level." *Braun*, 14 F. Supp. 3d at 394. The court draws all reasonable inferences in the plaintiff's favor and accepts all factual allegations as true. *See Braun*, 14 F. Supp. 3d at 394; *see also First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994)).

Legal conclusions, however, "are not given a presumption of truthfulness." *Sanderson v. Roethenmund*, 682 F. Supp. 205, 209 n.8 (S.D.N.Y. Mar. 22, 1998). Indeed, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[I]f a plaintiff has not 'nudged his or her claim across the line from conceivable to plausible, the complaint must be dismissed.'" *Braun*, 14 F. Supp. 3d at 394 (quoting *Ashcroft*, 556 U.S. at 679). Moreover, Fed. R. Civ. P. 8 "'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Braun*, 14 F. Supp. 3d at 394 (quoting *Ashcroft*, 556 U.S. at 678). Indeed, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown' – 'that the pleader is entitled to relief.'" *Braun*, 14 F. Supp. 3d at 394 (quoting Ashcroft, 556 U.S. at 678-79 (holding "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.")).

Further, "[t]he Court may consider outside documents that are integral to the complaint, regardless whether attached to the complaint, so long as the pleader has notice of them or refers to them." *Smart v. Goord*, 441 F. Supp. 2d 631, 637 (S.D.N.Y. July 27, 2006); *see Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001); *Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000). "'While courts generally do not consider matters outside the pleadings, they may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are

integral to the pleadings in order to determine if a complaint should survive a 12(b)(6) motion." *Smart*, 441 F. Supp. 2d at 637. As explained further below, this Court may consider the envelopes that attended the Letter Plaintiff complains of at the Rule 12(b)(6) stage of proceedings, as Plaintiff had notice of them and they are integral to the Complaint. *See Smart*, 441 F. Supp. 2d at 637; *see also Schnall*, 225 F.3d at 266; *Weiss v. Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. Jan. 24, 2011).

**B.    This Court May Consider the Envelopes with the Letter, as the Envelopes are Integral to the Complaint.**

Plaintiff's Complaint explicitly refers to the June 19, 2019 Letter. (Doc. 1 at ¶ 27; Exhibit 1 at ¶ 37; Doc. 1-1; Exhibit 2). The Letter explicitly instructs Plaintiff to "send payment in full in the enclosed envelope." (Doc. 1-1; Exhibit 2). Plaintiff received both the mailing envelope and the return envelope with the complained-of June 19, 2019 Letter. (July 29, 2020 Affidavit of Thomas Perrotta ("Perrotta Affidavit") at ¶¶ 13-14; Exhibit 3; Exhibit 4). While Plaintiff failed to attach both the mailing envelope and the enclosed return envelope to her Complaint, Plaintiff's failure to do so does not bar this Court from considering the envelopes at this stage of the proceedings because they are ultimately documents referenced in the pleadings. *See Smart*, 441 F. Supp. 2d at 637. Additionally, because Plaintiff received both the mailing envelope and the return envelope with the Letter she complains of, Plaintiff undisputedly had notice of both envelopes. *See Smart*, 441 F. Supp. 2d at 637. As such, both the mailing envelope the Letter arrived in and the return envelope enclosed with the Letter are integral to Plaintiff's Complaint. (Exhibit 3; Exhibit 4). *Id*. This Court may, therefore, consider both envelopes in this Motion to Dismiss. *See Smart*, 441 F. Supp. 2d at 637; *see also Gregory*, 243 F.3d at 691; *see also Schnall*, 225 F.3d at 266.

C.        The Purpose of the FDCPA and the Least Sophisticated Consumer Standard.

Congress enacted the FDCPA "to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *See Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (*citing* 15 U.S.C. § 1692(e)). "The legislative history of the passage of the FDCPA explains that the need for the FDCPA arose because of collection abuses such as use of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." *See Kropelnicki*, 290 F.3d at 127 (*citing* S. Rep. No. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696).

The United States Court of Appeals for the Second Circuit has adopted a "least-sophisticated consumer" standard in analyzing liability under the FDCPA. *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). The standard is an objective analysis that "seeks to protect 'the naive' from abusive practices while simultaneously shielding debt collectors from liability for "bizarre or idiosyncratic interpretations" of debt collection letters. *See Greco v. Trauner, Cohen, & Thomas*, *L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) (citations omitted); *see Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998). The Second Circuit has held that the "least sophisticated consumer does not need to have even the sophistication of the average, every day, common consumer, but is neither irrational nor a dolt." *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). The least sophisticated consumer "is not a gifted linguist who closely parses a debt collection letter like a Wall Street lawyer analyzes a municipal bond offering or like

9

a patent lawyer construes a patent." *See Koehn v. Delta Outsource Grp.*, No. 18-c-1084, 2018 U.S. Dist. LEXIS 210759, at *6 (E.D. Wis. Dec. 14, 2018). The Second Circuit has "made clear that in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness." *See McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 190-91 (2d Cir. 2002) (*quoting Clomon*, 988 F.2d at 1319). Indeed, with regard to the least sophisticated consumer standard, the Second Circuit has warned against "conflat[ing] lack of sophistication with unreasonableness." *See Ellis*, 591 F.3d at 135.

**D.      The Letter Does Not Violate the FDCPA as a Matter of Law. Thus, Penn Credit's Motion to Dismiss Should be Granted.**

The gravamen of Plaintiff's Complaint is that the Letter's two addresses violate Section 1692e, Section 1692e(10), and Section 1692g of the FDCPA. (Doc. 1 at ¶¶ 35-111; Exhibit 1 at ¶¶ 35-111). Plaintiff specifically alleges that the Letter violates the FDCPA because its multiple addresses would allegedly confuse the least sophisticated consumer and leave her uncertain as to where to send a written debt dispute, which address to use to mail a request for the name of the original creditor, which address the consumer should use to submit a payment, and which address to use to accept the settlement offer. (Doc. 1 at ¶¶ 47-54, 56, 58, 66, 90-111 Exhibit 1 at ¶¶ 47-54, 56, 58, 66, 90-111). Plaintiff further claims the multiple addresses "overshadow" her statutory dispute and validation rights. (Doc. 1 at ¶¶ 56, 58, 66).\[1] All of Plaintiff's allegations fail because the mere inclusion of multiple addresses in a collection letter, without more, does not rise to the level of an actionable claim under the FDCPA. *See Saraci v. Convergent Outsourcing, Inc.*, No. 18-cv-6505, 2019 U.S. Dist. LEXIS 36228, at *7 (E.D.N.Y. Mar. 6, 2019); *see also Park v. Forster & Garbus, LLP*, No. 19-cv-3621, 2019 U.S. Dist. LEXIS 196003 (E.D.N.Y. Nov. 12, 2019).

---

[1]/ The Letter, however, contains no "settlement offer." (Doc. 1-1; Exhibit 2).

In *Saraci*, the plaintiff brought FDCPA claims against a defendant debt collector, after receiving the collector's letter containing multiple addresses. *See Saraci*, No. 18-cv-6505, 2019 U.S. Dist. LEXIS 36228, at *2. Exhibit 5 is a copy of the letter at issue in *Saraci*, which was obtained from the court docket. The letter at issue contained a Renton, Washington P.O. box in the top right-hand corner, with the collection agency's name, and the same Renton, Washington P.O. box with agency name appeared both in the body of the letter and on the letter's detachable payment slip. *Id*. at *2. (Exhibit 5). Additionally, in the top left-hand corner of the letter, a *different* P.O. box address appeared that was not accompanied with the name of the business. *Id*. at *3. (Exhibit 5). This address contained a return-mail address of Oaks, PA, as opposed to the debt collector's address in Renton, Washington. *Id*. at *3. (Exhibit 5). The plaintiff did not allege that he tried to pay or dispute the debt, or that the inclusion of the multiple addresses stopped him from doing either, but nonetheless argued that the letter was deceptive. *Id*.

The court rejected the plaintiff's argument and held that the letter "does not invite the type of confusion necessary to succeed on [an FDCPA] claim." *Id*. at *6. The court reasoned that the letter at issue invites consumers to mail their written disputes to the collector's Renton, Washington P.O. box—the address consistently associated with the collection agency's name on the collection letter. *Id*. at *7. (Exhibit 5). In its reasoning, the court contrasted the letter from another collector's letter in *Carbone v. Caliber Home Loans, Inc.*, where the court found that the inclusion of multiple addresses *did* constitute an FDCPA violation. *See Carbone v. Caliber Home Loans, Inc.*, No. 15-cv-4919, 2016 U.S. Dist. LEXIS 138433, at *4 (E.D.N.Y. Sept. 30, 2016). In *Carbone*, the letter directed consumers to mail their disputes to an "above-referenced address[,]" indicated for return-mail only, rather than the legitimate debt-dispute address, which was placed at the bottom of the letter. *See Carbone*, No. 15-cv-4919, 2016 U.S. Dist. LEXIS 138433, at *9-

11

10; *see also Saraci*, No. 18-cv-6505, 2019 U.S. Dist. LEXIS 36228, at *7. The court in *Saraci* further stated, "[i]t would be an idiosyncratic reading of the collection letter to think that the PO Box listed once under 'ATERSO01' could be the correct 'office' address rather than the Renton, Washington address, which consistently appears under the name of defendant's company." *Saraci*, No. 18-cv-6505, 2019 U.S. Dist. LEXIS 36228, at *7. (Exhibit 5). The court ruled, "there is nothing about this letter that would cause a consumer to send payment to the wrong address or interfere with his ability to dispute a debt." *See Saraci*, No. 18-cv-6505, 2019 U.S. Dist. LEXIS 36228, at *8. (Exhibit 5).

Here, the Letter Plaintiff complains of is akin to the letter in *Saraci*, as Penn Credit's very name is associated next to the proper P.O. box address for the recipient's use. (Exhibit 2; Doc. 1-1; Exhibit 5). As in the *Saraci* letter, where the debt collector's name is consistently located within proximity of the P.O. box for recipients, Penn Credit's name only appears at the top of the Letter and directly above the proper address for the recipient: P.O. Box 69703 Harrisburg, PA 17106-9703. (Exhibit 2; Doc. 1-1; Exhibit 5). As in *Saraci*, it would be an idiosyncratic reading of the Letter to think that the proper address for the recipient's use would be the one listed under "Department 91047[,]" which is nowhere near Penn Credit's name on the Letter. (Exhibit 2; Doc. 1-1). *See Saraci*, No. 18-cv-6505, 2019 U.S. Dist. LEXIS 36228, at *7. As a result, the Letter at issue does not invite the type of confusion necessary for Plaintiff to succeed on her FDCPA claims. (Exhibit 2; Doc. 1-1).

Another federal court in New York also rejected a similar multiple address FDCPA claim in *Park v. Forster & Garbus, LLP*, No. 19-cv-3621, 2019 U.S. Dist. LEXIS 196003 (E.D.N.Y. Nov. 12, 2019). There, the plaintiff brought a claim under Section 1692e of the FDCPA, and alleged that a collection letter he received was confusing and misleading because it contained

12

multiple addresses. *Park*, No. 19-cv-3621, 2019 U.S. Dist. LEXIS 196003, at *2. Exhibit 6 is a copy of the letter at issue in *Park*, which was obtained from the court docket.  In *Park*, the court found, "that the collection letter can only reasonably be interpreted in one way, as directing consumers to mail debt disputes to the [proper] P.O. Box address[.]" *Id.* at *11. (Exhibit 6). Thus, the court held, "that the collection letter's inclusion of two addresses does not violate the FDCPA as a matter of law." *Id.*

The court in *Park* reasoned that the collection letter contained a statement to "mail all correspondence and payments to the address listed below." *Id.* (Exhibit 6). The court further reasoned that the letter contained a detachable coupon to be returned in an enclosed envelope, and the detachable portion of the letter contained the collector's proper P.O. Box to send disputes, payments, and correspondence to. *Id.* at *11-12. (Exhibit 6). The court also observed that the collection letter at issue was "most similar to the one evaluated" by the court in *Saraci*. The court in *Park*, therefore, granted the defendant's motion to dismiss and dismissed the plaintiff's claims with prejudice. *Id.* at *27.

Here, Penn Credit's Letter is similar to the letter in *Park* because it also contains a detachable payment slip to be enclosed in a return envelope. (Exhibit 2; Doc. 1-1; Exhibit 4; Exhibit 6). Indeed, should Plaintiff utilize the return envelope as the Letter instructs, only Penn Credit's return address is made visible through the glassine window, similar to the letter in *Park*. (Exhibit 4; Exhibit 6; Exhibit 2; Doc. 1-1). Moreover, the letter in *Park*, which was found to not have violated the FDCPA, contains more addresses than Penn Credit's Letter: an office address and a separate P.O. Box address. (Exhibit 6). Penn Credit's Letter, however, only contains one address consistently associated with it: the P.O. Box address in Harrisburg, PA. (Exhibit 2; Doc. 1-1; Exhibit 4).

Indeed, just like the letters in *Saraci* and *Park*, here, the Letter's inclusion of multiple addresses does not violate the FDCPA as a matter of law. Penn Credit's name is conspicuously displayed in the top-right-hand corner of the Letter. (Doc. 1-1; Exhibit 2). The Letter states, "[p]lease contact our office today, or go online to account.penncredit.com, or send payment in full in the enclosed envelope." (Doc. 1-1; Exhibit 2). The Letter also states, directly above the detachable payment slip, "DETACH AND RETURN WITH PAYMENT TO EXPEDITE CREDIT TO YOUR ACCOUNT." (Doc. 1-1; Exhibit 2) (emphasis in original). An exact exemplar of the enclosed envelope, referenced in the Letter, is attached as Exhibit 4. Indeed, when the detachable portion of the Letter is placed in the enclosed envelope, as directed by the Letter, only Penn Credit's proper P.O. Box address is displayed. (Exhibit 4). The inclusion of multiple addresses in the Letter, therefore, is not the type of false or deceptive practice prohibited by the FDCPA. (Exhibit 2; Doc. 1-1; Exhibit 4). *See Saraci*, No. 18-cv-6505, 2019 U.S. Dist. LEXIS 36228, at *8; *see also Park*, No. 19-cv-3621, 2019 U.S. Dist. LEXIS 196003, at *27.

Indeed, the Oaks, PA P.O. Box address's placement in the upper left-hand corner of the detachable payment slip is significant because this area is traditionally reserved for a return-mail address, just like the return-mail address in the *Saraci* letter. *Saraci*, No. 18-cv-6505, 2019 U.S. Dist. LEXIS 36226 at *3. (Exhibit 2; Doc. 1-1; Exhibit 5). Moreover, this Oaks, PA P.O. Box is not associated with Penn Credit, but with "Department 91047." (Exhibit 2; Doc. 1-1). *See Saraci*, No. 18-cv-6505, 2019 U.S. Dist. LEXIS 36228, at *7 (noting "[i]t would be an idiosyncratic reading of the collection letter to think that the PO Box listed once under 'ATERSO01' could be the correct 'office' address rather than the Renton, Washington address, which consistently appears under the name of defendant's company.")

Exhibit 3, which is an exact exemplar of the envelope the Letter was mailed in, reveals that this Oaks, PA P.O. Box would have been displayed as a return-mail address in the upper-left-hand glassine window when sent to Plaintiff. (Exhibit 3; Perrotta Affidavit at ¶ 13). Additionally, Exhibit 3 reveals that, should the Letter not have arrived at its intended destination—to Plaintiff— it would have been returned to the Oaks, PA P.O. Box address. (Exhibit 3). Just like the letter in *Saraci*, Penn Credit's name is not affiliated with this return-mail address. (Exhibit 2; Doc. 1-1; Exhibit 5). Additionally, no confusion exists with this Letter because, when the detachable payment slip portion of the Letter is placed in the return envelope provided, its destination is not in dispute: "PENN CREDIT P.O. Box 69703 Harrisburg, PA 17106-9703." (Exhibit 4; Exhibit 2; Doc. 1-1). Thus, Penn Credit's Letter is very similar to the letter in *Park* also. *See Park*, No. 19-cv-3621, 2019 U.S. Dist. LEXIS 196003 at *11 (holding "the collection letter can only *reasonably* be interpreted in one way, as directing consumers to mail debt disputes to the [proper] P.O. Box address[.]") (emphasis added).

Furthermore, like the plaintiff in *Saraci*, Plaintiff did not allege that the multiple addresses prevented him from actually paying, disputing, or requesting validation of the debt, but only that the least sophisticated consumer would be prevented from doing so. *See Saraci*, No. 18-cv-6505, 2019 U.S. Dist. LEXIS 36228, at *3. (Doc. 1 at ¶¶ 21-111). Indeed, this allegation is a mere legal conclusion that this Court need not accept at this stage of proceedings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Indeed, the conclusion that the Letter violates the FDCPA is more likely to be arrived at by an ambitious lawyer practicing consumer law, rather than by the least sophisticated consumer himself. *See Saraci*, No. 18-cv-6505, 2019 U.S. Dist. LEXIS 36228, at *7-8; *see also Ghulyani v. Stephens & Michaels Associates, Inc.*, 2015 U.S. Dist. LEXIS 145424, at *3 (S.D.N.Y. Oct. 26,

15

2015) (rejecting an interpretation of a collection letter "more likely to be arrived at by an enterprising plaintiff's lawyer than by a least sophisticated consumer"); *see Ocampo v. Client Servs.*, No. 18-cv-4326, 2019 U.S. Dist. LEXIS 111819, at *7 (E.D.N.Y. July 3, 2019). Unfortunately, "[c]ases like this—litigation over whether an innocuous debt collection letter is in technical compliance with the FDCPA—are far afield from the original intent behind the FDCPA. . . ." [T]his is a 'lawyer's case,' by which I mean that it alleges a defect of which only a sophisticated lawyer, not the least sophisticated consumer, would conceive." *Ocampo*, No. 18-cv-4326, 2019 U.S. Dist. LEXIS 111819, at *8; *see Campagna v. Client Servs.*, No. 18-cv-3039, 2019 U.S. Dist. LEXIS 208164, at *29-30 (E.D.N.Y. Dec. 3, 2019); *see also Koehn*, No. 18-c-1084, 2018 U.S. Dist. LEXIS 210759, at *12 (E.D. Wis. Dec. 14, 2018) (holding that the plaintiff's FDCPA claim was premised upon nothing more than a "deliberate misreading" of the collection letter and "fantastic conjecture[,]" "more likely to be arrived at by an enterprising plaintiff's lawyer than by a least sophisticated consumer.") (internal quotations omitted).

The FDCPA does not impose upon Penn Credit an obligation to ensure that individuals know how to properly mail correspondence through the U.S. Postal Service. Indeed, the least sophisticated consumer is neither irrational nor a dolt. *See Ellis*, 591 F.3d at 135. To assert that Penn Credit's Letter and accompanying return-envelope is somehow a false or deceptive practice outlawed by Section 1692e of the FDCPA is to remove any hint of objective reasonableness from the least sophisticated consumer standard. Indeed, reasonableness is an integral element of the least sophisticated consumer standard. *See McStay*, 308 F.3d at 190-91 (*quoting Clomon*, 988 F.2d at 1319). Thus, even if the return envelope is lost, the least sophisticated consumer, upon viewing the Letter, would recognize that Penn Credit's address is the very address conspicuously associated with Penn Credit's very own name: "PENN CREDIT P.O. Box 69703 Harrisburg, PA 17106-

9703." (Doc. 1-1; Exhibit 2). Just like the letter in *Saraci*, here, Penn Credit's name is conspicuously located at the top of the Letter, and on the detachable portion of the Letter *with* its address. (Exhibit 2; Doc. 1-1; Exhibit 5). *See Saraci*, No. 18-cv-6505, 2019 U.S. Dist. LEXIS 36228, at *7. Therefore, even if a consumer chose not to utilize the return-envelope provided, they would reasonably interpret Penn Credit's address as P.O. Box 69703 Harrisburg, PA 17106-9703. (Doc. 1-1; Exhibit 2). To conclude otherwise would simply be lending credence to this "lawyer's case." *Ocampo*, No. 18-cv-4326, 2019 U.S. Dist. LEXIS 111819, at *8

Additionally, to the extent Plaintiff will rely on *Pinyuk v. Cbe Grp.* and *Musarra v. Balanced Healthcare Receivables, LLC*, (*see* Doc. 9 at p. 3 of 3), both *Pinyuk* and *Musarra* are inapposite. Indeed, the collection letter in *Pinyuk* more closely resembled the letter in *Carbone*, which invited FDCPA liability. Exhibit 7 is a copy of the letter at issue in *Pinyuk* that was obtained from the court docket. In fact, the collection letter in *Pinyuk* contained two (2) different addresses for the collector and did not specify which address belonged to the collector. (Exhibit 7). *See Pinyuk v. Cbe Grp.*, No. 17-cv-5753, 2019 U.S. Dist. LEXIS 71899, at *2 (E.D.N.Y. Apr. 29, 2019). Indeed, the letter in *Pinyuk* contained both a street address of 1309 Technology Pkwy, Cedar Falls, IA 50613 associated with the defendant and a Payment Processing Center address at P.O. Box 2038 Waterloo, IA 50704-2038, which was also associated with the defendant. (Exhibit 7). Unlike the letter in *Pinyuk*, Penn Credit's Letter only contains one address next to Penn Credit's name. (Exhibit 2; Doc. 1-1; Exhibit 7). Further, the analysis in *Pinyuk* directly relied on *Carbone*, because both the *Pinyuk* and *Carbone* letters were determined by the court to be similarly misleading. *See Pinyuk*, No. 17-cv-5753, 2019 U.S. Dist. LEXIS 71899, at *16-17. Additionally, the *Carbone* letter contained two separate addresses associated with the defendant. Exhibit 8 is a true and correct copy of the letter at issue in Carbone, which was obtained from the court docket.

17

Perhaps most importantly, in *Pinyuk*, the plaintiff alleged that she was *actually* confused as to which of the locations to mail her dispute to, and thus she *actually* did not mail the letter. *Id*. at *18. Plaintiff's Complaint contains no such allegations. (Doc. 1 at ¶¶ 21-111).

The court in *Musarra v. Balanced Healthcare Receivables, LLC*, No. 19-cv-5814, 2020 WL 1166449 (E.D.N.Y. Mar. 11, 2019) found that the collection letter stated a claim under the FDCPA. Exhibit 9 is a true and correct copy of the letter at issue in *Musarra*, which was obtained from the court docket. The *Musarra* letter contained both a street address and a P.O. Box address for the defendant: Balanced Healthcare Receivables 164 Burke Street, Suite 201 Nashua, NH 03060; and Balanced Healthcare Receivables P.O. Box 9577 Manchester, NH 03108-9577. (Exhibit 9). Moreover, the *Musarra* letter contained various references to "this office" but did not state which address belongs to "this office:" the Burke Street address or the Manchester, NH P.O. Box address. *See Musarra*, No. 19-cv-5814, 2020 WL 1166449, at *4-5. (Exhibit 9).

In contrast to the letters in *Pinyuk* and *Musarra*, the Letter at issue only contains one address that is plainly associated with Penn Credit: "PENN CREDIT P.O. Box 69703 Harrisburg, PA 17106-9703.". (Doc. 1-1; Exhibit 2; Exhibit 7; Exhibit 9). Further, the other address on the detachable payment slip, stating, "Department 91047[,]" is plainly an unaffiliated return-mail address, as indicated by its very placement in the upper left-hand corner of the detachable payment slip, and because Penn Credit is not identified with this address. (Doc. 1-1; Exhibit 2). This address is just like the return mail address on the *Saraci* letter, which was not found to cause confusion. (Exhibit 5; Exhibit 2). Indeed, when the Letter is folded and placed into its mailing envelope by the letter vendor, this address is displayed in its usual place—the upper left-hand corner. (Exhibit 3; Perrotta Affidavit at ¶ 13). Moreover, utilization of the return envelope that arrived with the Letter reveals that only Penn Credit's proper address is displayed upon dispatch by the consumer.

18

(Perrotta Affidavit at ¶ 14; Exhibit 4). Thus, there is only one destination for any payments, correspondence, validation requests, or other similar requests: "PENN CREDIT P.O. Box 69703 Harrisburg, PA 17106-9703." (Doc. 1-1; Exhibit 2). (emphasis in original). Indeed, Penn Credit's Letter is nearly identical to the letter in *Gansburg v. Credit Control, LLC*, No. 18-cv-5054, 2020 WL 1862928 (E.D.N.Y. Feb. 27, 2020), insofar as there is only one P.O. Box address consistently associated with the debt collector's name. Exhibit 10 is a true and correct copy of the letter in *Gansburg*, which was obtained from the court docket.

Simply, because the Letter cannot *reasonably* be interpreted as a false or deceptive practice barred by Section 1692e or Section 1692e(10) of the FDCPA, and because the Letter in no way interferes with Plaintiff's validation rights under Section 1692g, Penn Credit respectfully requests that this Court grant its Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

## IV.    CONCLUSION

For all of the above reasons, Penn Credit respectfully requests that the Court grant its Motion to Dismiss for failure to state a claim upon which relief can be granted, and dismiss Plaintiff's Complaint with prejudice under Fed. R. Civ. P. 12(b)(6).

KAUFMAN DOLOWICH & VOLUCK, LLP

By:    /S/ Richard J. Perr
       RICHARD J. PERR, ESQUIRE
       Four Penn Center
       1600 JFK Blvd., Suite 1030
       Philadelphia, PA  19103
       (v) 215.501.7002; (f) 215.405.2973
       e-mail: rperr@kdvlaw.com
       Attorney for Defendant, Penn Credit Corporation

Dated: July 31, 2020

19

## CERTIFICATE OF SERVICE

I, RICHARD J. PERR, ESQUIRE, hereby certify that on this date I caused to be served a true and correct copy of the foregoing via the Court's CM/ECF system on the following:

Craig B. Sanders, Esquire
David M. Barshay, Esquire
Jonathan Mark Cader, Esq.
Barshay Sanders, PLLC
100 Garden City Plaza, Suite 500
Garden City, NY 11530
csanders@barshaysanders.com
dbarshay@barshaysanders.com
jcader@barshaysanders.com
Attorneys for Plaintiff

/s/ Richard J. Perr
RICHARD J. PERR, ESQUIRE

Dated: July 31, 2020

4816-7462-7525, v. 2