**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| NAFTALI SCHMELCZER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PENN CREDIT CORPORATION,<br><br>Defendant. | Docket No. 7:20-cv-02380-KMK |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

**BARSHAY SANDERS, PLLC**
*Attorneys for Plaintiff*

By:    Jonathan M. Cader, Esq.
David M. Barshay, Esq.
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel: (516) 203-7600
Fax: (516) 706-5055
jcader@barshaysanders.com
dbarshay@barshaysanders.com

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

SUMMARY OF THE CASE ...................................................................................... 2

ARGUMENT............................................................................................................... 7

I.    DEFENDANT'S MOTION TO DISMISS THE COMPLAINT FOR  FAILURE TO STATE A CLAIM MUST BE DENIED ..................................................... 8

II.   STANDARDS OF REVIEW ........................................................................ 8

    A.    Standard of Review – Rule 12(b)(6)........................................................ 8

    B.    Standard of Review – the Least Sophisticated Consumer ...................... 9

III.  A CONSUMER'S *PRIMA FACIE* CASE UNDER THE FDCPA................................. 10

    A.    Plaintiff has Established the First Two Elements of his *Prima Facie* Case ......... 11

IV.   THE COURT CANNOT CONSIDER DEFENDANT'S AFFIDAVIT ON THE INSTANT MOTION ..................................................................................... 11

    A.    The Perrotta Affidavit May Not be Considered on the Instant Motion Pursuant to Rule 12(b)(6).................................................................... 12

    B.    The Perrotta Affidavit is Inadmissible Hearsay.................................. 14

V.    PLAINTIFF'S "MULTIPLE ADDRESS" CLAIM IS LEGALLY SUFFICIENT .......... 15

    A.    This Court's Decision in *Adler* Should be Controlling......................... 18

VI.   DEFENDANT'S "LAWYER'S CASE" ARGUMENT MUST BE REJECTED ............ 19

CONCLUSION........................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Adler v. Penn Credit Corp.*,
  No. 19-CV-7084 (KMK), 2020 WL 4474624 (S.D.N.Y. Aug. 3, 2020) ........................ 1, 17, 18

*Allstate Ins. Co. v. Rozenberg*,
  771 F. Supp. 2d 254 (E.D.N.Y. 2011) ................................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................................... 8

*Avila v. Riexinger & Assocs., LLC*,
  817 F.3d 72 (2d Cir. 2016) ................................................................................. 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................... 7, 8, 9

*Beyah v. Coughlin*,
  789 F.2d 986 (2d Cir. 1986) ............................................................................... 14

*Clomon v. Jackson*,
  988 F.2d 1314 (2d Cir. 1993) ............................................................................... 9

*Dedyo v. Baker Eng'g N.Y., Inc.*,
  No. 96-CV-7152, 1998 WL 9376 (S.D.N.Y. Jan.13, 1998) ...................................... 14

*Ellis v. Solomon and Solomon, P.C.*,
  591 F.3d 130 (2d Cir. 2010) ................................................................................. 9

*Faber v. Metro. Life Ins. Co.*,
  648 F.3d 98 (2d Cir. 2011) ................................................................................... 8

*Geldzahler v. New York Med. Coll.*,
  663 F. Supp. 2d 379 (S.D.N.Y. 2009) ..................................................................... 8

*Gold v. Shapiro, Dicaro & Barak, LLC*,
  No. 18CV6787PKCSJB, 2019 WL 4752093 (E.D.N.Y. Sept. 30, 2019) ....................... 4

*Graff v. United Collection Bureau, Inc.*,
  132 F. Supp. 3d 470 (E.D.N.Y. 2016) ................................................................... 18

*Hess v. Cohen & Slamowitz LLP*,
  637 F.3d 117 (2d Cir. 2011) ............................................................................... 10

ii

*Hillaire v. Delta Funding Corp.*,
No. 98-7188, 2002 WL 31123860 (E.D.N.Y. Sept. 26, 2002) .................................................. 9

*Hooks v. Forman, Holt, Eliades & Ravin*, LLC,
717 F.3d 282 (2d Cir. 2013 ...................................................................................................... 2

*Hu v. City of New York*,
927 F.3d 81 (2d Cir. 2019) ........................................................................................................ 9

*Jacobson v. Healthcare Fin. Servs., Inc.*, .
516 F.3d 85 (2d Cir. 2008) ........................................................................................... 2, 9, 18

*Koontz v. Great Neck Union Free Sch. Dist.*,
No. 12-CV-2538 PKC, 2014 WL 2197084 (E.D.N.Y. May 27, 2014) .................................. 14

*Kropelnicki v. Siegel*,
290 F.3d 118 (2d Cir. 2002) ...................................................................................................... 2

*LaFaro v. New York Cardiothoracic Grp., PLLC*,
570 F.3d 471 (2d Cir. 2009) ...................................................................................................... 8

*Major League Baseball Props. v. Salvino, Inc.*,
542 F.3d 290 (2d Cir. 2008) .................................................................................................... 14

*Matson v. Bd. of Educ. of City Sch. Dist. of New York*,
631 F.3d 57 (2d Cir. 2011) ........................................................................................................ 8

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007) .................................................................................................... 11

*Miller v. Wolpoff & Abramson, L.L.P.*,
321 F.3d 292 (2d Cir. 2003) ...................................................................................................... 8

*Montanez v. D & D Auto, LLC*,
No. 3:15-CV-397 (VAB), 2016 WL 1254199 (D. Conn. Mar. 29, 2016) .............................. 11

*Musarra v. Balanced Healthcare Receivables, LLC*,
No. 19CV5814ARRRML, 2020 WL 1166449 (E.D.N.Y. Mar. 11, 2020) .............................. 17

*Ocampo v. Client Servs., Inc.*,
No. 18-CV-4326 (BMC), 2019 WL 2881422 (E.D.N.Y. July 3, 2019) .................................. 18

*Park v. Forster & Garbus, LLP*,
No. 19CV3621ARRST, 2019 WL 5895703 (E.D.N.Y. Nov. 12, 2019) ........................... 16, 17

*Peters v. General Service Bureau, Inc.*,
  277 F.3d 1051 (8th Cir. 2002) ........................................................................................ 9

*Pinyuk v. CBE Group, Inc.*,
  2019 WL 1900985 (E.D.N.Y. Apr. 29, 2019) .................................................... 16, 17

*Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*,
  38 F.3d 627 (2d Cir. 1994) .......................................................................................... 14

*Quinteros v. MBI Associates, Inc.*,
  999 F. Supp. 2d 434 (E.D.N.Y. 2014) ......................................................................... 9

*Russell v. Equifax A.R.S.*,
  74 F.3d 30 (2d Cir. 1996) ............................................................................................. 9

*Saraci v. Convergent Outsourcing, Inc.*,
  No. 18-CV-6505 (BMC), 2019 WL 1062098 (E.D.N.Y. Mar. 6, 2019) ............................ 15, 16

*Savino v. Computer Credit, Inc.*,
  164 F.3d 81 (2d Cir. 1998) ........................................................................................... 2

*Sellers v. M.C. Floor Crafters, Inc.*,
  842 F.2d 639 (2d Cir. 1988) ........................................................................................ 14

*Smart v. Goord*,
  441 F. Supp. 2d 631 (S.D.N.Y. 2006) on reconsideration in part, No. 04 CIV. 8850 RWS,
  2008 WL 591230 (S.D.N.Y. Mar. 3, 2008) ................................................................ 12

*Suquilanda v. Cohen & Slamowitz, LLP*,
  No. 10-CV-5868 (PKC), 2011 WL 4344044 (S.D.N.Y. Sept. 8, 2011) .................................. 10

*Vincent v. The Money Store*,
  736 F.3d 88 (2d Cir. 2013) ........................................................................................... 2

**Statutes**
  15 U.S.C.
  § 1692 ............................................................................................................................. 1
  § 1692a(2) .................................................................................................................. 5, 10
  § 1692a(3) .................................................................................................................. 4, 10
  § 1692a(5) .................................................................................................................. 5, 10
  § 1692a(6) .................................................................................................................. 4, 10
  § 1692g ........................................................................................................................... 2
  § 1692g(a) .................................................................................................................. 2, 5

iv

**Rules**

Fed. R. Civ. Pro. 8(a)(2) ........................................................................................... 7, 8
Fed. R. Civ. Pro. 12(b)(6). ...................................................................................... passim
Fed. R. Evid. 602 ....................................................................................................... 14
Fed. R. Evid. 801 ....................................................................................................... 14
Fed. R. Evid. 802 ....................................................................................................... 14
Fed. R. Evid. 803 ....................................................................................................... 14
Fed. R. Evid. 1002 ....................................................................................................... 3

Plaintiff Naftali Schmelczer ("*Plaintiff*") submits the instant memorandum in opposition to the motion of Defendant, Penn Credit Corporation ("*Defendant*"), to dismiss the Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6).

## PRELIMINARY STATEMENT

Defendant's motion to dismiss should be denied for a variety of reasons—the most compelling of which is that Your Honor recently denied a motion filed by this Defendant on the same exact argument in *Adler v. Penn Credit Corp.*, No. 19-CV-7084 (KMK), 2020 WL 4474624, at *1 (S.D.N.Y. Aug. 3, 2020). Indeed, a side-by-side comparison of the table of authorities presented in the instant motion and that in *Adler* (Case No.: 7:19-cv-07084-KMK at *Dkt. No.* 23) shows that the authorities relied upon by Defendant herein are identical.

The only appreciable difference between the instant case and *Adler* is that the Plaintiff herein asserts an additional and separate claim not advanced in *Adler*. More specifically, Count 1 of the instant Complaint alleges that Defendant's collection letter failed to advise Plaintiff as to how to submit a written dispute, insofar as the letter contains multiple addresses while providing no guidance as to which address, if either, is to be used for submitting disputes. Count 2 alleges that the provision of multiple addresses would cause the consumer to be similarly confused as to where to send payments. The complaint in *Adler* alleged confusion only as to sending payments. This difference aside, a further comparison of the brief filed by Defendant in *Adler* as with that herein, shows that the motion before the Court is nearly a word-for-word reiteration of the arguments already rejected by Your Honor, supplemented only to add colloquy to the additional claim advanced in this case.

Because Defendant has presented no new facts or argument as to why the Court should depart from its prior ruling—it should not—it is respectfully submitted that the Court should

1

adhere to its ruling in *Adler* and deny Defendant's motion on the grounds that the Complaint states

claims sufficiently plausible so as to withstand the instant motion to dismiss.

## SUMMARY OF THE CASE

This case arises under the Fair Debt Collection Practices Act (15 U.S.C. § 1692, *et seq.*)

(the "*FDCPA*"), a federal statute enacted to protect consumers from the deceptive, harassing and/or

aggressive actions often taken by debt collectors, who have been incentivized to use such improper

methods by the promise of earning commissions on the collection of debts which the original

creditor had determined to be either uncollectible or unprofitable[1]. To further these ends, the

FDCPA "establishe[d] certain rights for consumers whose debts are placed in the hands of

professional debt collectors for collection.[2]"  Chief among those rights, and most relevant to the

case-at-bar, is a debt collector's obligation to inform a consumer of the right to dispute an alleged

debt and/or to obtain verification of same, a right which the Second Circuit has described as being

the most important of those conferred by the FDCPA.[3]  To comply with this mandate, a debt

collector has the obligation to format and structure a letter so that it would not cause the recipient

to be confused or uncertain as to her rights (and/or how to exercise them).[4]  These standards are to

be measured from the perspective of the "least sophisticated consumer" (the "*LSC*").[5]

Plaintiff commenced this action following receipt of a letter from Defendant dated June

19, 2019, through which Defendant was seeking to collect a debt purportedly owed on account of

a delinquent utility bill (the "*Letter*").  The Letter was the initial communication received by

---

[1]     *See e.g.*, *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002).
[2]     *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013).
[3]     *Hooks v. Forman, Holt, Eliades & Ravin*, *LLC*, 717 F.3d 282, 286 (2d Cir. 2013) ("The right to dispute a debt is the most fundamental of those set forth in § 1692g(a)").
[4]     *Savino v. Computer Credit, Inc.,* 164 F.3d 81, 85 (2d Cir. 1998).
[5]     *Jacobson v. Healthcare Fin. Servs., Inc*., 516 F.3d 85, 90 (2d Cir. 2008).

Plaintiff from Defendant with respect to the alleged debt and, therefore, is subject to the requirements of § 1692g.

In this action, Plaintiff alleges, *inter alia,* that the Letter failed to effectively communicate his validation rights, insofar as the Letter features multiple addresses for Defendant, but does not specify the address to which written disputes are to be sent.  This is significant because, while a consumer may dispute a debt either verbally or in writing, if a dispute is lodged in writing, it is accompanied by a prohibition that the debt collector cease collection activity until such validation or verification has been provided.  There is no such prohibition when a dispute is lodged verbally.  Insofar as notifying a consumer of the right to suspend any collection efforts is anathematic to a debt collector's purpose of coercing payment, debt collectors have expended substantial resources in crafting collection letters which purport to comply with the technical requirements of the statute, but at the expense of its spirit.  This cannot be countenanced by the Courts.

In moving to dismiss, Defendant does not dispute the content of its Letter, nor could it, insofar as the Letter is a document which speaks for itself (Fed. R. Evid. 1002).  Instead, the primary (if not singular) argument advanced by Defendant is that the Letter was purportedly accompanied by a "glassine window envelope" which, if used with the "payment coupon," would purportedly show only Defendant's proper mailing address.  Based on the foregoing, Defendant contends that the provision of multiple addresses in the letter is neither a misleading nor deceptive practice in violation of the FDCPA.

Defendant's argument must fail for several significant reasons.  First, the motion rests entirely on an affidavit provided by Thomas Perrotta, Defendant's "compliance manager" and, with very limited exception, the Court may not consider materials outside of the four corners of a pleading on a Rule 12(b)(6) motion.  Second, if the Court were to find an exception warranted here

3

(which Plaintiff avers it should not), the affidavit would be precluded under the hearsay rule, to the extent that Perotta does not purport to speak on behalf of himself or Defendant but, instead, on behalf of Defendant's third-party mailing vendor, RevSpring.  Third, the affidavit testimony does not resolve the question of whether the LSC would be confused by this Letter, standing alone. Fourth, Defendant's argument rests on the contention that the LSC would understand that—what Defendant describes as being the "payment coupon"—is also to be used for mailing written disputes (and/or requests for validation).  This argument is disingenuous, if not risible.

For these reasons, as well as those set forth in the argument *infra*, it is respectfully submitted that Defendant's motion should be denied in its entirety.

## PROCEDURAL POSTURE

Plaintiff commenced this action upon the filing of a Complaint with this Court on Marh 18, 2020.  *Dkt. No.* 1, *et seq.*  The Clerk issued a summons to Defendant on the following date. *Dkt. No.* 5.  Defendant executed a waiver of service of the summons and Complaint on April 6, 2020, and such waiver of service was filed with the Court on the same date.  *Dkt. No.* 6.  On June 2, 2020, Defendant filed a letter requesting a pre-motion conference for purpose of seeking the Court's permission to file a motion to dismiss.  *Dkt. No.* 7, *et seq.*  Plaintiff filed a response in opposition on June 9, 2020.  *Dkt. No.* 9.  The Court held a pre-motion conference on July 16, 2020, at which time the Court granted Defendant leave to file its contemplated motion and set a briefing schedule therefor.  *Dkt. No.* 12.

## STATEMENT OF FACTS

The facts of this case are taken from the Complaint, which must be accepted as true for

purposes of Defendant's motion to dismiss for failure to state a claim.[6]

Plaintiff is an individual who is a citizen of the State of New York, residing in Rockland County. *Dkt. No.* 1 at ¶ 5. Plaintiff is a natural person allegedly obligated to pay a debt and is a "consumer" as defined by 15 U.S.C. § 1692a(3). *Id.* at ¶¶ 6-7. Defendant is a Pennsylvania Corporation with a principal place of business in Dauphin County, Pennsylvania. *Id.* at ¶ 8. Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by consumers and is a "debt collector" as defined by 15 U.S.C. § 1692a(6). *Id.* at ¶¶ 9-13.

Defendant alleges that Plaintiff owes a debt (the "*Alleged Debt*"). *Id.* at ¶ 21. The Alleged Debt does not arise from any business enterprise of Plaintiff and was primarily for personal, family, or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5). *Id.* at ¶¶ 22-24. Sometime after the incurrence of the Alleged Debt, at an exact time known only to Defendant, the Alleged Debt was assigned or otherwise transferred to Defendant for collection. *Id.* at ¶ 25. At the time the Alleged Debt was assigned or otherwise transferred to Defendant for collection, the Alleged Debt was in default. *Id.* at ¶ 26.

In its efforts to collect the Alleged Debt, Defendant contacted Plaintiff by letter dated June 19, 2019 (the "*Letter*"). *Id.* at ¶ 27, *Dkt. No*. 1-1. The Letter conveyed information about the Alleged Debt and is a "communication" as defined by 15 U.S.C. § 1692a(2). *Id.* at ¶¶ 28-29. The Letter was the initial communication received by Plaintiff from Defendant concerning the Alleged Debt (*id.* at ¶ 30) and, therefore the Letter is subject to the requirements of 15 U.S.C. § 1692g(a).

The header of the Letter features Defendant's name and logo in the upper-lefthand corner,

---

[6]     *Gold v. Shapiro, Dicaro & Barak, LLC*, No. 18CV6787PKCSJB, 2019 WL 4752093, at *2 (E.D.N.Y. Sept. 30, 2019) ("In addressing the sufficiency of a complaint, courts must accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff").

5

but does not feature any address associated therewith.  Immediately below the header, without

salutation, the Letter reads as follows:

> "Our client has referred your delinquent account(s) referenced below for collection. Our client is serious about collecting all monies owed them [sic.] and I am sure your intentions are to honor your debt.  Send payment using the enclosed envelope or you may go online to [website address] to make payment or contact our office to pay over the phone.  Contact our office if you are unable to pay the amount due."

*Dkt. No.* 1-1.

Thereafter, the Letter features a paragraph purporting to be the validation notice required

by § 1692g(a), which reads as follows:

> "Unless you notify **this office** within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, **this office** will assume this debt is valid.  If you notify **this office** in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, **this office** will obtain verification of the debt or obtain a copy of a judgment and [will] mail you a copy of such judgment or verification.  If you request **this office** in writing within 30 days after receiving this notice, **this office** will provide you with the name and address of the original creditor if different from the current creditor."

*Dkt. No.* 1-1 (emphases added).

While the Letter's "validation notice" instructs Plaintiff to contact Defendant at its "office"

at least six (6) times, the Letter does not identify any address as being that of Defendant's "office."

Instead, whereas the header of the Letter features Defendant's name and logo in the upper-lefthand

corner, there is no address associated with the name or logo.  Below that, as is quoted above, the

first paragraph of the Letter instructs Plaintiff to use the "enclosed envelope" (to the extent that

there was one) for making payment only.  Consistent with that instruction, the bottom-third of the

Letter consists of a "payment coupon," with instruction to "DETACH AND RETURN WITH

PAYMENT TO EXPEDITE CREDIT TO YOUR ACCOUNT."  *Id.* (allcap font as in original).

Compounding the problem is that the "mailing coupon" does not feature one address for

6

Defendant—it features three (one of which belongs to Plaintiff).  The first address, located within the coupon, is: P.O Box 1259, Department 91047 Oaks, PA 19456.  *Id.*  The second address, located within the coupon, is: 2800 Commerce Drive PO Box 69703 Harrisburg, PA 17106-9703. *Id.*  The third address is Plaintiff's.

The Letter fails to state whether either address is to be used for the mailing of a written dispute.  Further, the Letter fails to state whether payment must be mailed to the first address or the second address.  *Id*.

## ARGUMENT

In moving to dismiss the Complaint for failure to state a claim, Defendant avers that "the mere inclusion of multiple addresses, without more, does not rise to the level of an actionable claim under the FDCPA."  Def. Mem. at p. 1.  Critically, this is the same argument which Defendant advanced (and Your Honor rejected) in *Adler*. ("the mere inclusion of multiple addresses in [the Payment Letter], without more, does not rise to the level of an actionable claim under the FDCPA") 2020 WL 4474624, at *2.  Defendant bases this argument, at least in part, on the contention that the Letter was purportedly accompanied by a "glassine window envelope" which, if used for its intended purpose would purportedly allay any confusion because "only [Defendant's] proper address would be displayed."  Def. Mem. at p. 14.  As with the above, Your Honor rejected this argument in *Adler,* finding that "Because the envelopes are not dispositive to this Motion, the Court does not address whether they may be considered on a motion to dismiss." *Adler,* 2020 WL 4474624, at FN2.  In the absence of any new arguments—there are none—the Court should not hesitate to deny the instant motion for the same reasons and analysis articulated in *Adler*.

7

I.     **DEFENDANT'S MOTION TO DISMISS THE COMPLAINT FOR
       FAILURE TO STATE A CLAIM MUST BE DENIED**

In adjudicating Defendant's motion to dismiss for an alleged failure to state a claim, the Court should be guided by two principals.  In no particular order, they are the rules governing a motion under Rule 12(b)(6) and those governing the application of the "least sophisticated consumer" standard.  When considering those factors together, the Court should find that Defendant's motion must be denied, insofar as the Complaint contains sufficient factual predicate to show that Plaintiff has stated a claim upon which relief can be granted.

II.    **STANDARDS OF REVIEW**

       A.   **Standard of Review – Rule 12(b)(6)**

Under Rule 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. Pro. 8(a)(2).  In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) the Supreme Court explained that—in order to survive a motion to dismiss—a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.  In this regard, "a claim has facial plausibility when the well-pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

The plausibility standard is not akin to a "probability requirement" but, instead, asks for nothing more than a sheer possibility that a defendant has acted unlawfully.  *Iqbal*, 556 U.S. at 678.  The Second Circuit has made clear that while *Twombly* imposed a "plausibility requirement" on pleadings under Rule 8, it did not change the Rule 8 pleading standard.  Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

8

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all of the factual allegations contained in the complaint as true and must draw all reasonable inferences in the non-moving party's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011); *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citing, *inter alia*, *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

In other words, at the pleading stage, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 72 (2d Cir. 2011). "Even after *Twombly* and *Iqbal*, the Court's role in deciding a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geldzahler v. New York Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009). Under this standard, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Hu v. City of New York*, 927 F.3d 81, 97 (2d Cir. 2019) (quoting *Twombly*, 550 U.S. at 556).

## B. **Standard of Review – the Least Sophisticated Consumer**

In determining whether a communication violates the FDCPA, the Second Circuit applies the least sophisticated consumer standard (the "*LSC Standard*"). *Jacobson v.* Healthcare *Fin. Servs., Inc.,* 516 F.3d 85, 90 (2d Cir. 2008). The LSC Standard is designed to ensure that the FDCPA protects all consumers, "the gullible as well as the shrewd" (*Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)), as well as the "naïve and the credulous." *Quinteros v. MBI Associates,*

9

*Inc.,* 999 F. Supp. 2d 434, 437 (E.D.N.Y. 2014) (citing *Id.*).  It is well-settled law that the LSC does not have "the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer."  *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010).  Indeed, the LSC has been described as a person of "below average sophistication or intelligence." *Hillaire v. Delta Funding Corp.*, No. 98-7188, 2002 WL 31123860, at *2 (E.D.N.Y. Sept. 26, 2002) (quoting *Peters v. General Service Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002)).

In ensuring that both the gullible and naïve are equally protected by the FDCPA, the law stops short of making actionable every "bizarre or idiosyncratic" interpretation of debt collection letters.  *Quinteros,* 999 F.Supp.2d at 437 (quoting *Clomon,* 988 F.2d at 1320). That said, to ensure proper application of the LSC Standard, while Courts have held that the LSC is "neither irrational nor a dolt" (*Ellis*, 591 F.3d at 135; *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)) the Court is to be guided by the fact that the LSC possesses little more than "a rudimentary amount of information" about the world.  *Quinteros,* 999 F.Supp.2d at 437; *Clomon,* 988 F.2d at 1320.  The standard of care in crafting a collection letter is therefore fairly high, such that it may be clearly understood by the LSC.  Indeed, the Second Circuit has instructed, because the FDCPA is "primarily a consumer protection statute ... we must construe its terms in liberal fashion [to achieve] the underlying Congressional purpose."  *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016) (citations omitted).

## III.   A CONSUMER'S *PRIMA FACIE* CASE UNDER THE FDCPA

To establish a prima facie case under the FDCPA, a plaintiff must satisfy three (3) elements: (1) the plaintiff is a "consumer"; (2) the defendant is a "debt collector"; and (3) the defendant has violated, by act or omission, a provision of the FDCPA. See generally *Suquilanda*

*v. Cohen & Slamowitz, LLP*, No. 10-CV-5868 (PKC), 2011 WL 4344044, at \*3 (S.D.N.Y. Sept. 8, 2011) citing *Hess v. Cohen & Slamowitz LLP*, 637 F.3d 117, 120 (2d Cir. 2011).

A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). A "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the . . . services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debt, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6). A "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

### A.  Plaintiff has Established the First Two Elements of his *Prima Facie* Case

In moving to dismiss the instant case, Defendant has not disputed (or attempted to dispute) the well-pleaded allegations of the Complaint that Plaintiff is a consumer within the meaning of the FDCPA and/or that Defendant is a debt collector within the meaning of the FDCPA. Accordingly, the only question before the Court is whether Defendant has violated any provision of the FDCPA.  For the reasons that follow, Plaintiff respectfully submits that the Court should find that the Complaint plausibly alleges that it did.

### IV.    THE COURT CANNOT CONSIDER DEFENDANT'S AFFIDAVIT ON THE INSTANT MOTION

As an initial matter, the Court should not consider the Affidavit of Thomas Perrotta (*Dkt. No.* 14-1, *et seq.*) in adjudicating the instant motion for one (or both) of two reasons.  First,

11

Defendant has failed to establish any cause for the Court to grant an exception to the standards governing a Rule 12(b)(6) motion. Second, the Perrotta Affidavit would be inadmissible under the hearsay rules.

### A.  The Perrotta Affidavit May Not be Considered on the Instant Motion Pursuant to Rule 12(b)(6)

"It is well settled that a Court cannot consider documents outside the pleadings on a Rule 12(b)(6) motion to dismiss unless the documents are incorporated by reference in the complaint or are integral to the complaint." *Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 268 (E.D.N.Y. 2011); see also *Montanez v. D & D Auto, LLC*, No. 3:15-CV-397 (VAB), 2016 WL 1254199, at *3 (D. Conn. Mar. 29, 2016) ("Generally, in resolving a Rule 12(b)(6) motion, the Court also must consider only "the facts as asserted within the four corners of the complaint") (citing *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 191 (2d Cir. 2007)).

While Defendant appears to recognize the applicable standard, it wrongfully concludes that the Perrotta Affidavit (or the documents annexed thereto) come within the purview of this exception. Defendant's argument is based on the contention that "Plaintiff's failure to attach both the mailing envelope and the return envelope does not bar the Court from considering same, insofar as they are either referenced in the Complaint or integral to the Complaint." Def. Mem. at p. 8. Defendant is mistaken as to both points for several reasons.

First, as is discussed more fully in Point IV.B, *infra,* Defendant has failed to set forth proof in admissible form that the "return envelope" was, in fact, included with this Letter. Second, even if the return envelope were included with the Letter, it is not referenced in the Complaint. Indeed, Defendant does not cite to any statement in the Complaint wherein the return envelope is referenced. That is because there is no such reference. Instead, the Complaint alleges confusion

12

arising from the Letter alone.  Third, Defendant's contention that the return envelope is "integral" to the Complaint is based on pure conjecture.

Defendant's extensive reliance on *Smart v. Goord*, 441 F. Supp. 2d 631, 634 (S.D.N.Y. 2006) on reconsideration in part, No. 04 CIV. 8850 RWS, 2008 WL 591230 (S.D.N.Y. Mar. 3, 2008) is misplaced.  Defendant cites *Smart* for the premise that "while courts generally do not consider matters outside the pleadings, they may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a 12(b)(6) motion." Def. Mem. at pp. 7-8.  While this this is an accurate quotation from *Smart,* it has no relevance to the case-at-bar.

More specifically, *Smart* involved a prisoner's claims involving, *inter alia,* deprivation of rights, retaliation and abuse.  The defendants moved to dismiss on the grounds that the complainant did not exhaust her administrative remedies.  Insofar as the Court found that "exhaustion of administrative remedies to be a condition precedent to bringing suit, an inmate plaintiff necessarily refers to and relies on documents exhibiting proof of exhaustion. "Because the exhaustion issue is an integral part of a prisoner's claim, the Court may refer to materials outside of the complaint on a 12(b)(6) motion in determining whether a plaintiff exhausted [such remedies]." *Smart,* 441 F. Supp. 2d at 637.  The materials which the Court considered in *Smart* included records and reports of administrative bodies, items in the record of the case, matters of general public record, of which the Court found it could take judicial notice.  No such documents are at issue in this case and, therefore, *Smart* should not be considered persuasive for its reasoning.

For these reasons, Defendant has failed to establish that the putative return envelope should be considered under any exception to the general rule that, in resolving a Rule 12(b)(6) motion,

13

the Court may consider only "the facts as asserted within the four corners of the complaint".

*McCarthy, supra.*

## B. The Perrotta Affidavit is Inadmissible Hearsay

Even if the Court were to find that the Perrotta Affidavit (and/or its exhibits) fall within the *McCarthy* exception for considering materials outside the four corners of the pleadings, it could still not admit the Affidavit or the exhibits under the rules against hearsay. In his Affidavit, Mr. Perrotta identifies himself as the "compliance manager" of Defendant, as well as an "authorized custodian of record" [sic.] for Defendant. Def. Mem. at ¶¶ 3-4. Plaintiff takes no position with respect to the foregoing statements, insofar as they are irrelevant. That is because Perrotta does not purport to offer testimony on behalf of Defendant but, instead, on behalf of a third-party.

More specifically, Perrotta states that Defendant uses "RevSpring" [sic.] as a third-party vendor to perform mailing services for Defendant. *Perrotta Aff.* at ¶ 9. Thereafter, Perrotta purports to describe what RevSpring did (or did not) do in mailing the Letter to Plaintiff. *Perrotta Aff.* at ¶¶ 10-14. Critically to Defendant's theory of dismissal, Perrotta avers that RevSpring purportedly included a "glassine window return envelope" with the Letter sent to Plaintiff. *Perrotta Aff.* at ¶ 13. Perrotta does not state the basis for his knowledge in this regard, insofar as he does not purport to be employed by RevSpring in any capacity—let alone in a capacity to testify as to RevSpring's mailing practices. Even if Perrotta had inquired of RevSpring, the Affidavit would still be inadmissible under the hearsay rules.

Pursuant to Rule 602 of the Federal Rules of Evidence, "a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. To satisfy this standard, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall

14

show affirmatively that the affiant is competent to testify to the matters stated therein." *Koontz v. Great Neck Union Free Sch. Dist.*, No. 12-CV-2538 PKC, 2014 WL 2197084, at FN1 (E.D.N.Y. May 27, 2014) (quoting *Major League Baseball Props. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).

Continuing, the Court found that "hearsay testimony that would not be admissible if testified to at the trial may not properly be set forth in the Rule 56(e) affidavit." *Id.* (quoting *Beyah v. Coughlin*, 789 F.2d 986, 989 (2d Cir. 1986) (alterations removed)); See also *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988)) (affidavits must be made on the basis of personal knowledge); *Dedyo v. Baker Eng'g N.Y., Inc.*, No. 96-CV-7152, 1998 WL 9376, at *4 (S.D.N.Y. Jan.13, 1998) (documentary evidence must be properly authenticated); *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994) (The party proffering evidence has the burden of showing that the prerequisites for its admissibility are met).

Here, Defendant has proffered no evidence to establish that Perrotta is competent to testify on behalf of RevSpring and, indeed, he does not even claim to be.  Instead, Perrotta avers only that he is competent to testify on behalf of Defendant.  Insofar as Perrotta's testimony with respect to RevSpring is not based on personal knowledge, the affidavit must be stricken under the Rules against hearsay (e.g., Fed. R. Evid. 801, 802, 803).

## V.  <u>PLAINTIFF'S "MULTIPLE ADDRESS" CLAIM IS LEGALLY SUFFICIENT</u>

Likely recognizing that its attempts to introduce the Perrotta Affidavit and its exhibits will fail, Defendant next argues that the Letter is otherwise purportedly clear as to the address to which payments are to be sent.

In support of its position, Defendant relies primarily on Judge Cogan's decision in *Saraci v. Convergent Outsourcing, Inc.*, No. 18-CV-6505 (BMC), 2019 WL 1062098 (E.D.N.Y. Mar. 6,

15

2019) on Judge Ross' decision in *Park v. Forster & Garbus, LLP*, No. 19CV3621ARRST, 2019 WL 5895703 (E.D.N.Y. Nov. 12, 2019).  Critically, these were the same two cases on which Defendant primarily relied in *Adler*.

Defendant's reliance on *Saraci* is misplaced, insofar the letter in *Saraci* is readily distinguishable from the Letter herein.  More specifically, the letter in *Saraci* contained three references to the debt collector's address.  The first was printed in the header of the letter under the debt collector's logo.  The same address was printed in the body of the letter—in an offset text box—specifically saying "send payments to Convergent Outsourcing, Inc., at [address].  The same address was also featured in the "payment coupon."  (EDNY Case No. 1:18-cv-06505-BMC at *Dkt. No.* 1-1).  The only other address was printed in the header of the letter in the upper lefthand corner, opposite the debt collector's logo, and was featured with no other prominence.  On these facts, Judge Cogan held that the LSC could not possibly be confused by the letter, insofar as:

> "**the Renton, Washington address appears three times** on the front of the letter, **and each time, it is associated with defendant's company name**, Convergent Outsourcing, Inc. Thus, defendant asserts, it would be irrational for a consumer to think that the Oaks, Pennsylvania address, which is not featured prominently on the letter, and is not associated with the name of defendant's company, is the proper mailing address for disputes."

*Saraci*, 2019 WL 1062098, at *2 (emphases added).

On those facts, Judge Cogan was not wrong in concluding (on summary judgment) that there was no *plausible* likelihood of confusion.  Instead, *Saraci* does little more than connote the oft-repeated maxim that "bad cases make bad law."

Defendant's reliance on *Park* fares no better.  In *Park,* the Court found that a separate statement instructing the recipient to "RETURN COUPON WITH PAYMENT TO [a specified address]" (*Park,* 2019 WL 5895703, at *1), in addition to repeating that address in the payment coupon, was sufficient to allay any consumer confusion.   To this end, Judge Ross found the

16

reasoning in *Saraci* to be persuasive.  Unfortunately for Defendant, the Letter herein is not similar to either *Saraci* or *Park.*

In contrast to *Saraci* and *Park,* Magistrate Judge Pollak rejected an even more compelling argument in *Pinyuk v. CBE Group, Inc.*, 2019 WL 1900985 (E.D.N.Y. Apr. 29, 2019).  In *Pinyuk,* the debt collector sent a letter which provided three different addresses at which it was allegedly located, as does the Letter here.  The first address was set forth in the header of the letter, as being a street address in Cedar Falls, IA.  The second address was set forth in the upper left-hand corner of the payment coupon, that being a P.O. box in Waterloo, IA. The third address was set forth in the lower right-hand corner of the payment coupon, that being a different P.O. box in Waterloo, IA.

The defendant in *Pinyuk* filed a motion to dismiss the complaint, as does Defendant here.  Similar to the argument advanced by CBE in *Pinyuk,* Defendant argues that the LSC could not be confused by the provision of multiple addresses in the letter, insofar as the letter was purportedly clear on this point.  Defendant's argument must be rejected insofar as the letter in *Pinyuk* contained an additional sentence (not present here) which purported to qualify which of the three addresses was to be used as its mailing address (e.g. "The CBE Group, Inc. mailing address [a specified P.O. Box]")[7].

Judge Pollak rejected CBE's argument contending that the letter was purportedly clear.  Instead, Her Honor found the plaintiff's contention that "when [the LSC] receives a collection letter which she does not understand and the letter contains multiple addresses without clear direction as to where to mail a written request, the consumer would end up, as here, not disputing

---

[7]       This is not a misprint.  The word "is" (or any similar word) is missing from the text of the letter in *Pinyuk,* illustrated as follows: "The CBE Group, Inc. mailing address *is* [a specified P.O. Box]"

17

the letter at all because *she "is frightened of calling a collection agency where highly trained aggressive debt collectors answer calls*" to be persuasive. *Pinyuk*, 2019 WL 1900985 at *7 (emphasis added). Judge Pollak therefore held that the complaint set forth sufficient factual predicate to survive a motion to dismiss.

As this Court has observed, Judge Ross came to a similar conclusion in *Musarra v. Balanced Healthcare Receivables, LLC*, No. 19CV5814ARRRML, 2020 WL 1166449 (E.D.N.Y. Mar. 11, 2020). In *Musarra,* Judge Ross held that a collection letter which contained a street address, as well as two PO Box addresses could plausibly cause consumer confusion sufficient to withstand a motion to dismiss. In so holding, Judge Ross likened the facts of *Musarra* to those in *Pinyuk*, while distinguishing the letter from the facts (and her holding) in *Park* and that in *Saraci*.

## A. This Court's Decision in *Adler* Should be Controlling

More important than the decisions cited above, is the fact that this Court considered a nearly identical argument in *Adler* (*supra*) in a case involving this Defendant and a nearly identical defalcation alleged. In *Adler,* Defendant argues—as it does here—that the Court should consider the "glassine window envelopes" and find that the positioning of the addresses in the "payment coupon" would alleviate the confusion alleged to exist in the Complaint. Your Honor disagreed on the grounds that consideration of the purported envelopes would not be dispositive. *Adler,* 2020 WL 4474624, at FN2. As a result, the Court did not consider whether the Perrotta Affidavit would be excluded for hearsay or whether the envelopes should be considered.

Turning to the merits, Your Honor stated that "the Court [found] that Judge Ross's recent decision in *Musarra* [to be] instructive, insofar as the "coupon" in *Musarra* was formatted similarly to the coupon here and, as here, "the letter did not "emphasiz[e] any address" on the coupon, instead generally instructing that the coupon should be detached and returned with

18

payment." *Adler,* 2020 WL 4474624, at \*4. Your Honor went on to find that the inclusion of a third address in *Musarra*, as opposed to the two here, was not the bedrock of Judge Ross' reasoning. Instead, it was that the coupon was "crowded with [multiple] addresses … and the lack of direction on which address to use, could plausibly "invite confusion." *Adler,* 2020 WL 4474624, at \*5.

Following this discussion, Your Honor disagreed with Defendant's urging that *Adler* was more closely analogous to *Saraci* and *Park,* than it is to *Musarra* or *Pinyuk.* In so finding, the Court held that "Plaintiff has stated a plausible claim under the FDCPA and that it cannot dismiss the Complaint at this early stage." *Adler,* 2020 WL 4474624, at \*6.

The analysis and discussion should be even more pointed here, insofar as the claim in *Adler* alleged consumer confusion as to the address to which payments are to be sent only. In contrast to *Adler,* the Complaint in this case alleges that the consumer would not only be confused as to where to send payments, but where a written dispute is to be sent. Insofar as Your Honor found the former to state a plausible claim in *Adler,* the Court should adhere to that decision and find that there is even greater cause for confusion as to the latter. That is particularly so, given the Second Circuit's statement that "[t]he right to dispute a debt is the most fundamental of those set forth in § 1692g(a)." *Hooks,* 717 F.3d at 286. Insofar as the protections afforded by §§ 1692g(a)(4) and (5) can only be triggered by a written dispute, the Court should adhere to its decision in *Adler* and find that the Complaint states an even more compelling and plausible claim for relief herein.

## VI.   DEFENDANT'S "LAWYER'S CASE" ARGUMENT MUST BE REJECTED

In a final attempt to convince this Court that dismissal is warranted, Defendant avers that this is a "lawyer's case," that is one which has been described as being a case which "alleges a defect of which only a sophisticated lawyer, not the least sophisticated consumer, would

19

conceive." *Dkt. No.* 14 at p. 16 citing, *inter alia, Ocampo v. Client Servs., Inc.*, No. 18-CV-4326 (BMC), 2019 WL 2881422, at *3 (E.D.N.Y. July 3, 2019).

Defendant's reliance on *Ocampo* is of no moment, insofar as the quoted discussion is nothing more than colloquy. Further, it ignores Second Circuit precedent which expressly countenances such actions. *See, e.g., Jacobson,* 516 F.3d at 91 ("the FDCPA enlists the efforts of sophisticated consumers like Jacobson as "private attorneys general" to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others."); See also, *Graff v. United Collection Bureau, Inc*., 132 F. Supp. 3d 470, 480 (E.D.N.Y. 2016) ("Congress intended the 'private attorney general' enforcement mechanism of the FDCPA to facilitate the deterrent and curative effect of eliminating abusive collection practices.") (collecting cases).

In sum, the conclusion Defendant urges this Court to reach would be contrary to the Congressional purpose and intent of how the enforcement of the FDCPA is to be carried out. Indeed, the LSC is—by definition—unlikely to be aware that her rights have been violated. By extension, the LSC is far more likely to be confused by communications, such as the Letter herein. For this reason, it is critical to uphold the Second Circuit mandate that more sophisticated consumers (and/or their attorneys) be able to prosecute FDCPA violations to benefit the LSC.

## CONCLUSION

For all the reasons set forth herein, it is respectfully submitted that cause exists to deny Defendant's motion to dismiss in its entirety, together with such other and further relief as this Court deems just, equitable and proper.

Dated: Garden City, New York
        August 21, 2020

Respectfully submitted,

BARSHAY SANDERS, PLLC
*Attorneys for Plaintiff*

By:      *s/ Jonathan M. Cader*

Jonathan M. Cader, Esq.
David M. Barshay, Esq.
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel: (516) 203-7600
Fax: (516) 706-5055
jcader@barshaysanders.com
dbarshay@barshaysanders.com

21