


Kaufman Dolowich & Voluck, LLP

Four Penn Center
1600 JFK Boulevard, Suite 1030
Philadelphia, PA 19103

Telephone: 215.501.7002
Facsimile: 215.405.2973

www.kdvlaw.com

**Richard J. Perr, Esq.**
Email: rperr@kdvlaw.com

August 28, 2020

**<u>VIA CM/ECF</u>**
The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street, Chambers 533
White Plains, New York 10601-4150

> **Re:     Naftali Schmelczer, et al., v. Penn Credit Corporation**
> **<u>Civil Action No. 7:20-cv-02380-KMK</u>**

Dear Judge Karas:

I represent Defendant, Penn Credit Corporation ("Penn Credit"), in this action.  Penn Credit submits this letter attaching Exhibit "1" to its Response in Support of its Motion to Dismiss (Doc. 16) filed with the Court today.

Thank you for your consideration.

Respectfully,
/s/Richard J. Perr
RICHARD J. PERR

cc: All counsel of record (via ECF)

4814-8168-8265, v. 1

New York | Pennsylvania | New Jersey | San Francisco | Los Angeles | Florida | Chicago

# EXHIBIT "1"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
YVONNE DILLARD, individually and
on behalf of those similarly situated,

                  *Plaintiff*,

   -against-


FBCS, INC.,

                  *Defendant*.
----------------------------------------X

**<u>Memorandum and Order</u>**

19-CV-968(KAM)(RER)

**KIYO A. MATSUMOTO, United States District Judge:**

The plaintiff brought this action pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, alleging that the defendant, to whom she owes a debt, sent her a collection letter that was misleading in a variety of ways. The defendant has filed a motion to dismiss. For the reasons herein, the defendant's motion to dismiss is GRANTED.

## <u>Background</u>

The plaintiff, Yvonne Dillard ("Plaintiff"), who resides in New York, initiated this action on behalf of herself and "those similarly situated" on February 18, 2019. (ECF No. 1, Complaint.) Plaintiff's complaint alleged violations of the FDCPA by FBCS, Inc. ("Defendant"), a "debt collector" based in Hatboro, Pennsylvania. (*Id.* at ¶¶ 2, 4-6.) Plaintiff's allegations stem from a collection letter Defendant sent to Plaintiff that was dated January 7, 2019. (*Id.* at ¶ 24.) Plaintiff subsequently

filed an amended complaint on May 16, 2019.  (ECF No. 10, Amended Complaint ("Am. Compl.").)

The relevant collection letter was attached to Plaintiff's complaint as an exhibit.  (*See id.*, Ex. A.)  At the top right corner of the letter is Defendant's address in Pennsylvania, and its telephone number.  (*Id.*)  In the top left corner underneath the word "From:" is a P.O. Box address in Charlotte, North Carolina.  (*Id.*)  Below that are the words "Personal & Confidential," and then the date of the letter, and Plaintiff's address.  (*Id.*)

The body of the letter begins by asking if the recipient is "[i]interested in saving $799.92."  (*Id.*)  The letter explains that a particular bank "has authorized [Defendant] to accept a reduced amount to resolve [her] account."  (*Id.*)  The letter then lists the details of an alleged balance Plaintiff owes to the bank, including the total amount owed.  (*Id.*)  The letter offers Plaintiff four options to pay the "reduced amount": (1) she can "[p]ay the reduced amount of $266.57 to [Defendant] in one payment"; (2) she can pay a down payment of $53.31, "and the remaining balance of $213.26 [thirty] days after [her] [first] payment is received"; (3) she can "have an opportunity to split [her] reduced amount into [three] payments of $88.86 each," and she should "[c]all [Defendant's] office for details"; or (4) she

2

can "[c]ontact one of [Defendant's] agents, who have been specially trained to listen to [her] circumstances and guide [her] through the process," as "there may be other payment options available based on [her] specific situation." (*Id.*) The fourth option provides a phone number for the recipient to call, which is the same phone number as the one listed under Defendant's address in the top right corner of the letter. (*Id.*) The letter also invites Plaintiff to visit Defendant's website, and is signed by "Mike Sacco." Under his name, at the bottom of the first page, the letter states: "***Please see reverse side for important information.***" (*Id.*) Below that statement is a detachable slip with Defendant's address in Pennsylvania, which can be used to select a preferred payment option and sent to Defendant along with payments. (*Id.*)

The reverse side of the letter lists Defendant's hours of operation. (*Id.*) Below the hours of operation, the letter contains the following notices:

> This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that the debt or any portion thereof is disputed, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such

judgment or verification.  If you request this office in writing within 30 days after receiving this notice, this office will provide you the name and address of the original creditor, if different from the current creditor.

FBCS, Inc. is not obligated to renew this offer.

(*Id.*)

The back of the letter then provides Defendant's "New York City License Number."  (*Id.*)  Finally, it provides two more notices:

i.  Debt Collectors are prohibited from engaging in abusive, deceptive and misleading debt collection efforts including but not limited to threats of violence, obscene or profane language and repeated phone calls made with the intent to annoy, abuse or harass you.

ii. If a creditor or debt collector receives a money judgment against you in court, state or federal laws may prevent the following types of income from being taken to pay the debt: Supplemental Security Income (SSI), Social Security, Public Assistance, Spousal support, child support, alimony, Unemployment benefits, Disability benefits, Workers' compensation benefits, Public or Private pensions, Veterans' benefits, Federal student loans, Federal student grants, Federal work study funds and ninety percent of your wages or salary earned in the last sixty days.

(*Id.*)

Plaintiff first alleges that the letter violates the FDCPA's requirement that a collection letter make clear that a consumer can dispute a debt in writing.  Plaintiff contends that because the letter contains two separate mailing addresses, and Defendant's website lists two more addresses, a consumer would not

know where to send a written dispute.  (*See id.* at ¶¶ 38, 48-58.) Plaintiff further alleges that the language indicating that Defendant "is not obligated to renew this offer" violates the FDCPA, because "[a]llowing a consumer to dispute a debt is not an offer, but is a right under the FDCPA," and the language could lead consumers to "believe that Defendant is not obligated to accept disputes."  (*Id.* at ¶¶ 112, 116.)

In addition, Plaintiff alleges that the offer to pay a down payment, and then pay the remaining balance within thirty days, violates the FDCPA because it is open to multiple interpretations as to when the thirty days expires.  (*See id.* at ¶¶ 151-58.)  Plaintiff also alleges that the offer is open to multiple interpretations because it is not clear to which of the aforementioned four separate addresses a consumer should send the payment.  (*See id.* at ¶¶ 165-177.)

Finally, Plaintiff alleges that, although the letter contains the required notices about a consumer's ability to dispute the validity of the debt and to request the name and address of the original creditor, the letter nonetheless violates the FDCPA because Defendant "buries" this information "on the second page in running text in the body of the [l]etter in the same font size and color as the rest of the body of the [l]etter." (*Id.* at ¶¶ 188-89.)

Defendant has moved to dismiss for failure to state a claim.  (ECF No. 16, Motion to Dismiss; *see* ECF No. 17, Memorandum in Support ("Mem."); ECF No. 19, Reply in Support.)  Plaintiff opposes the motion.  (ECF No. 18, Response in Opposition ("Opp.").)  Defendant also filed a notice of supplemental authority (ECF No. 20), to which the court allowed Plaintiff to file a reply (ECF No. 22).

## Legal Standard

Plaintiff's complaint must be dismissed if it fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss under Rule 12(b)(6), the court evaluates the sufficiency of a complaint under a "two-pronged approach."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  First, courts are not bound to accept legal conclusions when examining the sufficiency of a complaint.  *See id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Second, the court must assume all well-pleaded facts are true, and then "determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.

## Discussion

Plaintiff brought this action pursuant to the FDCPA. "A violation under the FDCPA requires that (1) the plaintiff be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a 'debt collector,' and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements." *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559–60 (E.D.N.Y. 2017), *aff'd*, 740 F. App'x 742 (2d Cir. 2018). The court assumes the first two elements are true, that Plaintiff is a consumer who owes a debt or was subject to collection efforts and Defendant is a debt collector within the meaning of the statute, as Defendant has not disputed those two elements. Defendant argues only that the collection letter did not violate the FDCPA.

"In th[e Second] Circuit, the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993)). "The purpose of the least-sophisticated-consumer standard, here as in other areas of consumer law, is to ensure that the statute protects the gullible as well as the shrewd." *Id.* But, "[e]ven

7

in 'crafting a norm that protects the naive and the credulous,'" courts "have 'carefully preserved the concept of reasonableness.'" *Id.*

### I. Multiple Addresses

Under the FDCPA, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Further, a collection letter must contain "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector[,] and a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." 15 U.S.C. § 1692g(4)-(5). There is no dispute that the collection letter at issue here contains the foregoing required notices. Plaintiff alleges that because Defendant's letter provides two mailing addresses and a link to its website, which lists two additional addresses, the letter is misleading, as the multiple addresses render the notices ineffective, and impede a

8

consumers' ability to dispute the debt or request the original creditor.  (*See* Opp. at 17.)

The collection letter provides Defendant's address in Hatboro, Pennsylvania three separate times on the front of the letter: once in the top right corner, and twice on the detachable slip that the recipient can include in an envelope when opting to send payments.  (*See* Am. Compl., Ex. A.)  In each instance, the same address appears directly below Defendant's name, in bold lettering.  (*Id.*)  The only other address on the letter, a P.O. box, appears once, in the top left corner.  (*Id.*) Defendant's name does not appear above that address; rather, the word "From:" appears above it.  (*Id.*)

Even the least sophisticated consumer should be able to deduce that Defendant's address is the address that appears below Defendant's name three times, rather than the address that appears once under the word "From:" (which is the location from where the letter was sent).  This court agrees with Judge Cogan's reasoning in a similar case, that it "would be an idiosyncratic reading of the collection letter to think that the P.O. Box listed once . . . could be the correct 'office' address rather than the [Pennsylvania] address, which consistently appears under the name of [D]efendant's company."  *Saraci v. Convergent Outsourcing, Inc.*, No. 18-cv-6505, 2019 WL 1062098,

at *3 (E.D.N.Y. Mar. 6, 2019).

Plaintiff attempts to distinguish *Saraci* by pointing to three differences that are purportedly present in this case: (1) the detachable payment slip on the letter in this case indicates that it is only for making payments (i.e., not for disputing the debt or requesting the original creditor); (2) the letter in this case refers to "this office," without clarification; and (3) the letter also directs recipients to a website that lists two additional addresses. (Opp. at 18.)

With regard to the two addresses listed on Defendant's website, neither the amended complaint nor Plaintiff's opposition to the motion to dismiss shed any light on the context of those addresses. Based on Defendant's representations and the court's own review, Defendant's main Hatboro, Pennsylvania address is listed first at the bottom of Defendant's website, under the word "Headquarters." (Mem. at 11.) The two additional addresses, in New Jersey and Florida, are listed below the Pennsylvania address, each appearing under the word "Satellite." (*Id.*) Defendant's website clearly lists Defendant's main mailing address, and the listing of two addresses of Defendant's satellite locations on the website does not render the collection lender misleading.

Plaintiff's nitpicks fail to undermine Defendant's

letter, which provides effective notice regarding the debt and how to dispute it, inquire about it, or pay it. The FDCPA was designed to stop abusive and deceptive debt collection practices, not to spur litigation in response to a lawyers' creative interpretations of every collection letter. "Unlike some collection letters, which offer suggestive inducements that might cause a consumer to pay a debt that he [or she] might otherwise delay or not pay, or which might attempt to cause a consumer to waive his [or her] right to dispute the debt, there is nothing about this letter that would cause a consumer to send payment to the wrong address or interfere with his [or her] ability to dispute a debt." *Saraci*, 2019 WL 1062098, at *3. "Indeed, both the collection company and the consumer have the same interest in seeing to it that the communication is sent to the right address." *Id.; see also Park v. Forster & Garbus, LLP*, No. 19-cv-3621, 2019 WL 5895703, at *6 (E.D.N.Y. Nov. 12, 2019) ("[T]he presence of multiple addresses neither overshadows the validation notice nor renders the letter deceptive or misleading.").

The collection letter plainly states that the recipient has a right to dispute the debt, and to request information about the original creditor. Accordingly, Plaintiff's claims that the collection letter violates Sections

11

1692e and 1692g(4)-(5) because the letter (and Defendant's website) contain multiple addresses are dismissed.

## II.  Language Regarding Obligation to Renew Offer

Plaintiff also attempts to state a claim by arguing that the language on the back of the collection letter, that Defendant "is not obligated to renew this offer," violates the FDCPA because it could lead consumers to believe that Defendant is not obligated to accept disputes or requests for the original creditor.  (Opp. at 14-16.)  Defendant argues that the language applies only to the offer of various payment options, and it is separate from the required notices.  (Mem. at 17-18.)

Although not controlling law, Judge Posner, writing for a panel of the U.S. Court of Appeals for the Seventh Circuit, has held that the sentence, "We are not obligated to renew this offer," is valid safe-harbor language that debt collectors can include in collection letters in order to ensure that the least sophisticated consumer is "protected against receiving a false impression of his [or her] options . . . ." *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007).  The mere fact that Defendant included the language, "FBCS, Inc. is not obligated to renew this offer," under required notices regarding disputing or inquiring about the debt does not compel the conclusion that the least sophisticated

consumer would assume those notices were merely offers. Those notices are contained in their own paragraph, while the language about the lack of Defendant's obligation to renew its offer is in its own, separate paragraph. (*See* Am. Compl., Ex. A.)

The court must read the collection letter as a whole. *See McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 191 (2d Cir. 2002). In so doing, the court finds that the least sophisticated consumer would understand that the front of the letter provides an "offer" to pay a reduced amount and various payment options to satisfy the debt. The back of the letter provides certain notices and disclaimers, including that the consumer has a right to dispute the debt and to obtain information about the original creditor, and that there is no obligation for Defendant to renew the offer of paying a reduced amount using various payment options.

Defendant's decision to provide reasonable, court-approved safe-harbor language about the offer is not the type of conduct the FDCPA was designed to stop. Plaintiff's allegation that a person would assume that the language applies to the notices above it, rather than to the offer, is the kind of interpretation that is "much more likely to be arrived at by an enterprising plaintiff's lawyer than by a least sophisticated consumer." *Ghulyani v. Stephens & Michaels Assocs., Inc.*, No.

13

15-cv-5191, 2015 WL 6503849, at *3 (S.D.N.Y. Oct. 26, 2015). Accordingly, Plaintiff's claim, based on the language stating that "FBCS, Inc. is not obligated to renew this offer," is dismissed.

### III. Thirty-Day Payment Plan Deadline

Plaintiff also alleges that Defendant's offer that a consumer can make a down payment and then pay the remaining balance thirty days later is misleading because the collection letter "fails to state whether the payment must be sent by the consumer, or received by the Defendant, by the stated deadline." (Am. Compl. ¶ 152.) Defendant argues that the plain text of the letter, which states that the remaining balance is due "[thirty] days after [Plaintiff's] [first] payment is *received*," makes clear that the deadline is thirty days after the first payment is received. (Mem. at 16; *see* Am. Compl., Ex. A.) Plaintiff appears to concede this point, as she does not address Defendant's argument in her opposition to the motion to dismiss.

The court agrees that the plain language of the letter states that, if Plaintiff were to select that payment option, the full balance would be due thirty days after Defendant received her down payment. There is nothing in this provision, therefore, that is misleading or in violation of the FDCPA. Plaintiff's claim is thus, likewise, dismissed.

14

## IV.  Placement of Notice

Finally, Plaintiff alleges that the collection letter fails to adequately convey the recipient's right to dispute the debt, "because the validation notice is visually inconspicuous when taken in context of the [l]etter as a whole," and the notice is "burie[d]" within the text.  (Opp. at 14; Am. Compl. ¶ 188.)  Defendant argues that the first page contains a note, with three asterisks on each side, directing consumers to the back of the letter, where the notice is clearly legible among the other required notices and disclaimers.  (Mem. at 18.)

It appears that Defendant took care to design its letter to comply with the law.  The Second Circuit has held that "when a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back."  *McStay*, 308 F.3d at 191.  The collection letter here includes a "prominent instruction," with six asterisks, directing the reader's attention to the back of the letter.

Plaintiff's argument that the notice violates the FDCPA because it is "visually inconspicuous" is rejected.  The notice is not printed in a smaller font, or overshadowed by other large or bold font.  It is provided in legible typeface,

15

among other important information, such as Defendant's hours of operation, the aforementioned safe-harbor language, Defendant's New York City license number, and other notices about the recipient's rights.  (*See* Am. Compl., Ex. A.)

If Plaintiff were able to state a claim on the ground that this particular notice was "burie[d]," it would become exceptionally difficult for debt collectors to know which information to highlight, and which information to place elsewhere in the letter.  Here, if Defendant had made the validation notice larger or more prominent, Plaintiff could then have alleged that the notice overshadowed and buried other required information.

The law requires that a collection letter treat the least sophisticated consumer fairly.  However, the "least sophisticated consumer is neither irrational nor a dolt." *Saraci*, 2019 WL 1062098, at *4.  "Stretching the statute to unreasonable lengths does no one any good except lawyers."  *Id.*

Nothing about the collection letter at issue here leads to the conclusion that the recipient would be duped into validating a debt she did not owe.  Plaintiff's allegations amount to cherry-picking various portions of the letter, presenting them in a complaint deprived of context, and hoping something will stick.  While the FDCPA is an important tool to

prevent abusive and misleading debt collection practices, no such practices are presented here.  Defendant in this case drafted a collection that was clear, and that provided the required notices in a reasonable, and relatively concise, manner to the least sophisticated consumer.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, and Plaintiff's case is dismissed in its entirety.  The Clerk of Court is respectfully directed to enter judgment in favor of Defendant, and close this case.

**SO ORDERED.**

Dated:    Brooklyn, New York
          August 24, 2020

_____/s/_____
Hon. Kiyo A. Matsumoto
United States District Judge

17