**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | |
| NAFTALI SCHMELCZER, individually and on behalf of all others similarly situated, | : : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : : | NO. 7:20-cv-02380-KMK |
| PENN CREDIT CORPORATION, | : : | |
| | : | JURY TRIAL DEMANDED |
| Defendant. | : : | |

**DEFENDANT PENN CREDIT CORPORATION'S OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Defendant, Penn Credit Corporation ("Defendant" or "Penn Credit"), by and through its undersigned counsel, hereby files its Opposition to Plaintiff Naftali Schmelczer's ("Plaintiff" or "Schmelczer") Motion for Summary Judgment (Docs 34-37) and in support thereof states as follows:

**TABLE OF CONTENTS**

**PAGE**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................. 3

        A.  Plaintiff's Claims and Background Facts .................................................. 3

        B.  Proceedings ............................................................................................... 5

III.    LEGAL ARGUMENT ....................................................................................... 7

        A.  Standard of Review for Summary Judgment. .......................................... 7

        B.  Standard for Doctrine of the Law of the Case to Apply ........................... 8

        C.  Standard for Article III Standing ............................................................. 9

        D.  FDCPA Legal Standard ............................................................................ 11

        E.  The Doctrine of the Law of the Case Does Not Apply**.** .......................... 16

        F.  Plaintiff Lacks Standing ........................................................................... 16

        G.  The Letter Does Not Violate the FDCPA as a Matter of Law ................. 20

IV.     CONCLUSION .................................................................................................. 23

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Adams v. Skagit Bonded Collectors, LLC*,
836 Fed. Appx. 544 (9th Cir. 2020) ................................................................. 18, 20

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
821 F. 3d 352 (2d Cir. 2016) ........................................................................... 9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ......................................................................................... 7

*Arizona v. California*,
460 U.S. 605 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) .................................... 8

*Baker v. Home Depot*,
445 F.3d 541 (2d Cir. 2006) ........................................................................... 7

*Becker v. Genesis Fin. Servs.*,
No. 06-CV-5037, 2007 WL 4190473 (E.D. Wash. Nov. 21, 2007) ............... 6

*Brunett v. Convergent Outsourcing, Inc.*,
982 F. 3d 1067 (7th Cir. 2020) .......................................................... 17, 18, 19

*Casillas v. Madison Ave. Assocs.*,
926 F.3d 329 (7th Cir. 2019) ................................................................... 16, 17

*Clomon v. Jackson*,
988 F.2d 1314 (2d Cir. 1993) ................................................................ 11, 12, 13

*Cohen v. Rosicki, Rosicki & Assocs., P.C.*,
897 F.3d 75 (2d Cir. 2018) .................................................................. 12, 13, 21

*Daniels v. Aldridge Pite Haan, LLP*,
No. 5:20-CV-00089-TES, 2020 WL 3866649 (M.D. Ga. July 8, 2020) ......... 18

*Dewees v. Legal Serv., LLC*,
506 F. Supp. 2d 128 (E.D.N.Y. 2007) ........................................................... 12

*DiLaura v. Power Auth. of the State of N.Y.*,
982 F.2d 73 (2d Cir.1992) ............................................................................... 8

*Ellis v. Solomon & Solomon, P.C.*,
591 F.3d 130 (2d Cir. 2010) ........................................................................... 12

*Fed. Trade Comm'n v. Moses*,
913 F. 3d 297 (2d Cir. 2019) ........................................................................... 7

*Fletcher v. Atex, Inc.*,
68 F. 3d 1451 (2d Cir. 1995) ........................................................................... 7

*Foti v. NCO Fin. Sys., Inc.*,
424 F. Supp. 2d 643 (S.D.N.Y. 2006) ............................................................ 14

*Gansburg v. Credit Control, LLC*,
No. 18-CV-5054-FB-ST, 2020 WL 1862928 (E.D.N.Y. Feb. 27, 2020) .......... 22, 23

ii

*Gissendanner v. Enhanced Recovery Co., LLC*,
   793 F. App'x 5 (2d Cir. 2019)................................................................................ 12, 13
*Golden Pac. Bancorp v. F.D.I.C.*,
   No. 95–CV–9281, 2003 WL 21496842 (S.D.N.Y. June 27, 2003) ........................................... 8
*Greco v. Trauner, Cohen, & Thomas*, L.L.P.,
   412 F.3d 360 (2d Cir. 2005)................................................................................ 11, 12
*Illobre v. Fin. Recovery Servs.*,
   No. 16 CV 452, 2016 WL 6581332 (S.D.N.Y. Nov. 3, 2016)..................................................... 13
*Jacobs v. AllianceOne Receivables Mgmt., Inc.*,
   No. 19CV3447, 2020 WL 6273942 (E.D.N.Y. Oct. 26, 2020)..................................................... 13
*Jacobson v. Healthcare Fin. Servs., Inc.*,
   516 F.3d 85 (2d Cir. 2008)................................................................................ 13
*Jensen v. Pressler & Pressler*,
   791 F. 3d 413 (3d Cir. 2015).................................................................................... 12
*Katz v. Donna Karan Company, L.L.C.*,
   872 F. 3d 114 (2d Cir. 2019).................................................................................... 16
*Koehn v. Delta Outsource Grp.*,
   No. 18-c-1084, 2018 WL 6590617 (E.D. Wis. Dec. 14, 2018) ................................................ 12
*Kropelnicki v. Siegel*,
   290 F.3d 118 (2d Cir. 2002)................................................................................ 11
*Larkin v. Finance System of Green Bay, Inc.*,
   No. 18-3582, 2020 WL 7332483 (7th Cir. Dec. 14, 2020) ................................................ 17, 20
*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................ 9, 10
*Maguire v. Citicorp Retail Servs., Inc.*,
   147 F.3d 232 (2d Cir. 1998)................................................................................ 12
*McCarthy v. Dun & Bradstreet Corp.*,
   482 F. 3d 184 (2d Cir. 2007)................................................................................ 7
*McKenzie v. BellSouth Telecommc'ns., Inc.*,
   219 F.3d 508 (6th Cir.2000)................................................................................ 9
*McStay v. I.C. Sys., Inc.*,
   308 F.3d 188 (2d Cir. 2002)................................................................................ 12
*Musarra v. Balanced Healthcare Receivables, LLC*,
   No. 19CV5814-ARR-RML, 2020 WL 1166449 (E.D.N.Y. Mar. 11, 2020) ...... 6, 20, 21, 22, 23
*Nettles v. Midland Funding LLC*,
   No. 19-3327, 2020 WL 7488610 (7th Cir. Dec. 21, 2020) ........................................................ 17
*Nobel Ins. Co. v. City of N.Y.*,
   No. 00–CV1328 (KMK), 2006 WL 2848121 (S.D.N.Y. Sept. 29, 2006) ........................... 8, 15
*Papetti v. Rawlings Fin. Servs., LLC*,
   121 F. Supp. 3d 340 (S.D.N.Y. Aug. 5, 2015)........................................................................ 14
*Park v. Forster & Garbus, LLP*,
   No. 19-CV-3621, 2019 WL 5895703 (E.D.N.Y. Nov. 12, 2019)............................................. 20

*Perdomo v. Firstsource Advantage, LLC*,
No. 19-CV-03546, 2019 WL 4085255 (E.D.N.Y. Aug. 28, 2019)..................................... 12, 21

*Pinto v. Allstate Ins. Co.*,
221 F.3d 394 (2d Cir. 2000).............................................................................................. 7

*Pinyuk v. CBE Grp., Inc.*,
No. 17CV5753-RRM-CLP, 2019 WL 1900985 (E.D.N.Y. Apr. 29, 2019). ...................... 22, 23

*Pucillo v. National Credit Systems, Inc.*,
No. 1:19-cv-00285-TWP, 2021 WL 1061191 (S.D. Ind. Mar. 19, 2021)............................... 19

*RSL Comm'cns, PLC v. Bildirci,*
No. 04–CV5217, 2009 WL 454136 (S.D.N.Y. Feb. 23, 2009)................................................ 8

*Russell v. Equifax A.R.S.*,
74 F.3d 30 (2d Cir. 1996)................................................................................................... 22

*Sagendorf–Teal v. County of Rensselaer,*
100 F.3d 270 (2d Cir.1996)................................................................................................ 8

*Saraci v. Convergent Outsourcing, Inc.*,
No. 18-CV-6505, 2019 WL 1062098 (E.D.N.Y. Mar. 6, 2019) ........................................ 20, 21

*Savino v. Computer Credit, Inc.*,
164 F.3d 81 (2d Cir. 1998)................................................................................................ 13

*Sellers v. M.C. Floor Crafters, Inc.*,
842 F.2d 639 (2d Cir. 1988)................................................................................................ 8

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ........................................................................................ 10, 11, 16, 19

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) ............................................... 10

*Strubel v. Comenity Bank,*
842 F. 3d 181 (2d Cir. 2016)............................................................................................ 16

*Tipping-Lipshie v. Riddle,*
No. CV 99–4646, 2000 WL 33963916, (E.D.N.Y. Mar. 2, 2000)..................................... 14

*Tolan v. Cotton*,
134 S. Ct. 1861 (2014) ...................................................................................................... 7

*Tracy v. Freshwater*,
623 F. 3d 1451 (2d Cir. 1995)........................................................................................... 7

*Trichell v. Midland Credit Mgmt.*,
964 F.3d 990 (11th Cir. 2020)................................................................................... 18, 19, 20

*Vayngurt v. Sw. Credit Sys., L.P.*,
No. 16-cv-2261, 2016 WL 6068132 (E.D.N.Y. Oct. 14, 2016)........................................ 13, 14

*Vera v. Trans-Cont'l Credit & Collection Corp.*,
No. 98 CIV. 1866, 1999 WL 163162 (S.D.N.Y. Mar. 24, 1999)....................................... 14

*Warth v. Seldin*,
422 U.S. 490 (1975) ......................................................................................................... 9

*Weber v. Computer Credit, Inc.*,
259 F.R.D. 33 (E.D.N.Y. June 30, 2009) .......................................................................... 14

iv

*Zdanok v. Glidden Co., Durkee Famous Foods Div.,*
   327 F.2d 944 (2d Cir.1964) ................................................................................... 8

## Statutes

15 U.S.C. § 1692(e) ..................................................................................... 11
15 U.S.C. § 1692, *et seq.*............................................................................ 1
15 U.S.C. § 1692e ...................................................................... 3, 11, 13, 19
15 U.S.C. § 1692e(10) ...................................................................... 3, 11, 14
15 U.S.C. § 1692g............................................................................ 13, 14, 21, 22
15 U.S.C. § 1692g(a)(3)................................................................................... 14
15 U.S.C. § 1692g(b). ................................................................................... 3

## Rules

Fed. R. Civ. P. 56(a) ................................................................................... 7
Fed. R. Civ. P. 56(c)(4)................................................................................... 8

## Other Authorities

   S. Rep. No. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696 ........................ 11

## I.      INTRODUCTION

Plaintiff's claims as set forth in his Complaint under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") are limited to his assertion that that Defendant's letter, which included two addresses, was confusing because he did not know which address to use to send in a dispute, a request for the original creditor, or a payment.  Plaintiff is seeking damages against Penn Credit under the FDCPA for sending him a purportedly misleading letter on this basis. However, Plaintiff has suffered no concrete injury and lacks standing under Article III of the U.S. Constitution to pursue his claims.  Any claim that Plaintiff did not owe this debt is absent from Plaintiff's Complaint.  Plaintiff's assertions that he did not owe this money to Suez New York or why he received the letter are weak attempts to distract the Court from the relevant issues. Plaintiff has presented no evidence that he ever attempted to mail anything to Penn Credit, and has merely alleged a procedural violation of the FDCPA that is divorced from any concrete harm. Plaintiff also cannot demonstrate the challenged collection letter was materially misleading or that there was any overshadowing under the FDCPA.

Plaintiff's argument supporting summary judgment is that this Court should follow the denial of Penn Credit's Motion to Dismiss and grant Plaintiff summary judgment because nothing has changed since that time. (Doc. 35 at 1-2, 4, 7-10). However, Plaintiff's argument is incorrect and flawed and should be summarily rejected by this Court. In advancing this argument Plaintiff ignores that when this Court denied Defendant's Motion to Dismiss, the Court expressly recognized that summary judgment in favor of Penn Credit could be appropriate if discovery revealed that Plaintiff's payment or correspondence would have been received and processed at either of the addresses listed on the letter.  (Doc. 20 at 14). After Defendant's Motion to Dismiss was denied and consistent with the Court's opinion and analysis, Penn Credit obtained the sworn

Affidavit of Thomas Perrotta, Compliance Manager for Penn Credit ("Perrotta Affidavit"), and the sworn Declaration of Scott Astheimer, Vice President of Production Systems for RevSpring ("Astheimer Declaration"), which were submitted to the Court in support of Penn Credit's Motion for Summary Judgment (Docs. 29-1 and 29-2). The Perrotta Affidavit and Astheimer Declaration unequivocally and indisputably demonstrate that payments, disputes, and requests for the original creditor would have been accepted at either address, undermining Plaintiff's argument.

On April 9, 2021, Penn Credit filed its Motion for Summary Judgment consistent with the Court's analysis seeking dismissal of all of Plaintiff's claims on the grounds that Plaintiff has no standing, has suffered no concrete injury, and the letter upon which Plaintiff's claims are based is not materially misleading because any dispute, request for the original creditor, or payment would have been processed at either address. (Docs. 28-30). Plaintiff's Motion for Summary Judgment must be denied for these same reasons. However, if this Court is to determine that summary judgment in favor of Penn Credit is not warranted, at best, with respect to Plaintiff's claims there remain genuine issues of material fact that preclude summary judgment for Plaintiff and Plaintiff's Motion for Summary Judgment should be denied.\[1]

---

[1]\   Defendant has included a separate Statement of Additional Material Facts to which there Exists Genuine Issues of Disputed Fact to its Rule 56.1(b) Statement ("SAMF"). These are the same as Defendant's Statement of Material Facts that Defendant included with its Motion for Summary Judgment and follow the same numbering. (Doc. 29). Defendant adopts and incorporates all facts and arguments from its Motion for Summary Judgment from its and relies on them in support of this Opposition. (Docs. 28-30).

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Claims and Background Facts

Plaintiff filed his Complaint against Defendant on March 18, 2020. (Doc. 1).\2  Plaintiff's Complaint alleges that the June 19, 2019 Letter violates Sections 1692g(b), 1692e and 1692e(10) of the FDCPA because the least sophisticated consumer would be confused as to which address to use for mailing a dispute or a request regarding the name of the original creditor. (Doc. 1 at ¶¶ 35-65, 72-89). 15 U.S.C. §§ 1692, 1692e(10), 1692g(b).   Plaintiff also alleges that the multiple addresses overshadow the least sophisticated consumer's right to request verification information under Section 1692g(b) of the FDCPA. (Doc. 1 at ¶¶ 66-71).   Plaintiff claims that the least sophisticated consumer would be "frightened" of calling a collection agency because there was not "clear direction" as to where to mail a dispute or a request regarding the original creditor. (Doc. 1 at ¶¶ 55, 60).  Plaintiff also alleges that the least sophisticated consumer can interpret June 19, 2019 Letter to mean that payments must be mailed to the "first address" or the "second address." (Doc. 1 at ¶¶ 96-99, 103, 105).  Plaintiff further claims that because the letter could be open to more than one reasonable interpretation, one of which he claims is incorrect, the letter is in violation of 15 U.S.C. §§ 1692e and 1692e(10).  (Doc. 1 at ¶¶ 107-111).\3

The Complaint arises from Plaintiff's debt to Suez New York, which placed Plaintiff's account balance of $1,448.28 with Penn Credit for collection. (*See* SAMF at ¶ 1).  On June 19,

---

2/ Counsel for Plaintiff represented to this Court during a conference on February 25, 2021 that Plaintiff is not pursuing his class action claims.

3/ Plaintiff also makes several allegations in his Complaint regarding which address a consumer should use to accept a settlement offer, and whether a settlement offer would be accepted at a certain address. (Doc. 1 at ¶¶ 100-102, 104-106).  The June 19, 2019 Letter makes no mention of anything regarding or relating to a settlement offer. (Doc. 1-1). Thus, all of Plaintiff's allegations regarding a settlement offer should be dismissed and are clearly inappropriate for summary judgment.

2019, RevSpring prepared a letter to Plaintiff, which sought to collect the account balance of $1,448.28 ("June 19, 2019 Letter").  (SAMF at ¶¶ 7-20).  On June 20, 2019, RevSpring mailed the June 19, 2019 Letter to Plaintiff.  (SAMF at ¶ 6).  The June 19, 2019 Letter contained Penn Credit's remittance address, which is "PENN CREDIT PO Box 69703 Harrisburg PA, 17106-9703" ("Harrisburg, PA Address"), in the bottom-right corner of the detachable payment slip.  (SAMF at ¶ 13).  Plaintiff's address was listed on the June 19, 2019 Letter as "27 POLNOYA RD, UNIT 302 SPRING VALLEY NY, 10977-8264."  (SAMF at ¶ 12).  The June 19, 2019 Letter's payment slip included a return address field in the top-left with the address "P.O. Box 1259, Department 91047 Oaks, PA 19456" ("Oaks, PA Address").  (*See* SAMF at ¶ 14).  The Oaks, PA Address is used by RevSpring to receive and process mail deemed undeliverable as addressed by the United States Postal Service ("USPS"). (SAMF at ¶ 15).

The June 19, 2019 Letter was sent in an envelope that is identified by the following description: OSE-103-H-0.  (SAMF at ¶ 16).  This envelope contained two glassine windows. (SAMF at ¶ 16).  When the June 19, 2019 Letter is placed in the OSE-103-H-0 envelope, the Oaks, PA Address is visible through the top window in the left-hand corner of the envelope, and Plaintiff's address is visible through the bottom window. (SAMF at ¶ 17).

The June 19, 2019 Letter was accompanied by a return envelope, which had one glassine window, designed to reveal Penn Credit's Harrisburg, PA Address when the payment slip is placed in the envelope.  (SAMF at ¶¶ 18-20).  If an individual, such as Plaintiff, should send any correspondence or payment to RevSpring's Oaks, PA Address, RevSpring would forward the mail to Penn Credit as a courtesy or return the white mail to the USPS as return to sender if there was any doubt regarding the intended address for the enclosed correspondence.  (SAMF at ¶ 21).  Therefore, had Plaintiff sent any correspondence or a payment to the Oaks, PA Address, RevSpring

4

would have forwarded said correspondence or payments to Penn Credit.  (SAMF at ¶ 22).  Further, if RevSpring had forwarded Penn Credit any correspondence, which was received at P.O. Box 1259, Department 91047 Oaks, PA 19456, including but not limited to requests for validation and the original creditor and disputes concerning a financial obligation, or any payments, from Plaintiff or any individual that were mailed to RevSpring but intended for Penn Credit, Penn Credit would process all such correspondence and payments.  (SAMF at ¶ 23).  RevSpring promptly forwards mail to Penn Credit. (SAMF ¶ 24).  Penn Credit never received any written correspondence or payments from Plaintiff.  (SAMF at ¶ 25).  Penn Credit never received any written correspondence from RevSpring in the mail or via electronic means regarding Plaintiff.  (SAMF at ¶ 26).

Plaintiff now claims in his Declaration that he was "confused" by the June 19, 2019 Letter because he did not owe the balance of $1,448.28 and did not recall receiving any bills from Suez New York prior to receiving the June 19, 2019 Letter. (Doc. 36 at ¶ 8).  Plaintiff also claims that he did not know if Defendant was a "legitimate business" or if "Defendant would try to get him to agree to pay the alleged Debt."  (Doc. 36 at ¶¶ 12-13).  Plaintiff's statements constitute a red herring, which are designed to distract this Court from Plaintiff's actual claims.  Plaintiff has asserted no claims in this case that he did not owe the obligation that is the subject of this case nor has he alleged that he did not want call Defendant.  (Doc. 1).  There is no evidence in this case that Plaintiff ever tried to mail anything to Penn Credit or submit a payment or dispute.  (Docs. 1, 36).

### B.    Proceedings

On July 16, 2020, Defendant filed a Motion to Dismiss Plaintiff's Complaint.  (Doc. 13). Your Honor denied Defendant's Motion to Dismiss on February 1, 2021.  (Doc. 20).  Your Honor determined that the case could not be dismissed at this stage and stated:

> Thus, given the appearance of the Coupon and the lack of clear
> instructions in the Payment Letter, the Court finds that Plaintiff has

> stated a plausible claim under the FDCPA and that it cannot dismiss the Complaint at this early stage.  Instead, discovery could clarify whether the possibility for confusion over the addresses is material. For example, 'if it was possible for a consumer to send a dispute to any of the [two] addresses and have it properly processed, the [Payment] [L]etter would not be materially misleading.'  *Musarra*, 2020 WL 1166449, at \*6; *see also Becker v. Genesis Fin. Servs.*, No. 06-CV-5037, 2007 WL 4190473, at \*7 (E.D. Wash. Nov. 21, 2007) (noting, on a motion for summary judgment, that although "[t]wo separate addresses on a single letter could confuse the least sophisticated consumer," the plaintiff 'fail[ed] to refute [the defendant's] statement that both addresses accepted debt disputes'). However, this is a factual issue that must await summary judgment.

(Doc. 20 at 14).

Plaintiff has now filed his Motion for Summary Judgment, claiming that Your Honor's prior decision denying summary judgment should stand as law of the case, even though, consistent with Your Honor's reasoning, Penn Credit submitted an Affidavit from Penn Credit and a Declaration from RevSpring to establish  that either address would have properly processed Plaintiff's payment or received his correspondence/dispute had he mailed his correspondence/dispute or payment, rendering the letter not materially misleading as a matter of law.  (SAMF at ¶¶ 21-24; Doc. 35 at 1-2, 4, 7-10).  Plaintiff has not and cannot present any evidence that refutes the fact that Plaintiff's payment, dispute, or request for the original creditor if sent, would have been accepted and processed at either address.  However, in the event the Court does not find Defendant's evidence supporting the lack of materiality with respect to any confusion caused by the June 19, 2029 Letter is dispositive, Defendant submits there remain issues of material fact precluding summary judgment on behalf of Plaintiff. Plaintiff has also failed to demonstrate that he suffered any injury to confer Article III Standing.  Therefore, this Court should deny Plaintiff summary judgment with respect to his claims.

6

### III.   LEGAL ARGUMENT

#### A.   Standard of Review for Summary Judgment.

Federal Rule of Civil Procedure 56(a) states "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party."  *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000); *see also Baker v. Home Depot*, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment).  To determine if a disputed fact is material, the court examined whether "it might affect the outcome of the suit under governing law."  *Tracy v. Freshwater*, 623 F. 3d 1451, 1456 (2d Cir. 1995) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F. 3d 184, 202 (2d Cir. 2007)).  When deciding summary judgment motions "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  However, this deference to the nonmovant is limited, "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Fed. Trade Comm'n v. Moses*, 913 F. 3d 297, 305 (2d Cir. 2019) (quoting *Fletcher v. Atex, Inc.*, 68 F. 3d 1451, 1456 (2d Cir. 1995)) (internal quotation marks and alterations omitted).  Thus, "[c]onclusory allegations or denials . . . are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist."  *Id*.

Rule 56 requires affidavits or declarations submitted in connection with a summary judgment motion to "be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In accordance with this rule, affidavits must contain specific facts based on first-hand knowledge. A "hearsay affidavit is not a substitute for the personal knowledge of a party." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988).

### B.    Standard for Doctrine of the Law of the Case to Apply

The law of the case doctrine stands for the simple proposition that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co., Durkee Famous Foods Div.,* 327 F.2d 944, 953 (2d Cir.1964). However, "[a]pplication of the 'law of the case' doctrine is 'discretionary and does not limit a courts power to reconsider its own decisions prior to final judgment.'" *RSL Comm'cns, PLC v. Bildirci,* No. 04–CV5217, 2009 WL 454136, at *2 (S.D.N.Y. Feb. 23, 2009) (quoting *Sagendorf–Teal v. County of Rensselaer,* 100 F.3d 270, 277 (2d Cir.1996)); *see also Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) ("Law of the case directs a court's discretion, it does not limit the tribunal's power."); *accord DiLaura v. Power Auth. of the State of N.Y.,* 982 F.2d 73, 76 (2d Cir.1992); *Golden Pac. Bancorp v. F.D.I.C.,* No. 95–CV–9281, 2003 WL 21496842, at *5 n. 14 (S.D.N.Y. June 27, 2003) ("[W]hen the mandate of a higher court is not involved, the law of the case doctrine is a discretionary one.").

Further, because of the divergent standard of review applicable to motions to dismiss and motions for summary judgment, the law of the case doctrine is inapposite to this Court's analysis of whether, after the close of discovery, genuine issues of fact have been raised which survive summary judgment. (Doc. 35 at 1-2 4, 7-10); *see Nobel Ins. Co. v. City of N.Y.,* No. 00–CV1328 (KMK), 2006 WL 2848121, at *4 (S.D.N.Y. Sept. 29, 2006) ("[A]s a ruling in favor of a plaintiff on a motion to dismiss does not address the merits of a case, such ruling will not preclude a

subsequent ruling in favor of a defendant on the same issue on a motion for summary judgment following discovery . . . [t]he law of the case doctrine . . . does not preclude this Court from reconsidering issues on summary judgment that have initially been raised in the context of a motion to dismiss."); *see also McKenzie v. BellSouth Telecommc'ns., Inc.,* 219 F.3d 508, 513 (6th Cir.2000) (holding motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery.").

## C. Standard for Article III Standing

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Constitutional, or Article III standing, is an essential requirement in any claim and "imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Id.* "As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id*. at 498–99 (internal citations omitted). Constitutional standing requires (1) that the plaintiff have suffered an "injury in fact"—that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that there is "a causal connection between the injury and the conduct" of which the plaintiff complains; and (3) that it is "likely . . . that the injury will be redressed by a favorable decision." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F. 3d 352, 358 (2d Cir. 2016) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted)).

9

The Supreme Court's decision in *Spokeo, Inc. v. Robins* is paramount in determining whether plaintiffs have standing to sue under federal consumer protection statutes like the FDCPA. In *Spokeo*, the plaintiff brought claims against the defendant, an alleged consumer reporting agency, for violating various provisions of the Fair Credit Reporting Act ("FCRA"). *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546 (2016). According to the plaintiff, the defendant operated a website that allowed users to search for information about other individuals. *Spokeo, Inc.*, 136 S. Ct. at 1546. When the defendant was asked to generate a profile on the plaintiff, it released allegedly inaccurate information, which the plaintiff further alleged violated the FCRA. *Id*. In response to the plaintiff's allegations, the defendant filed a motion to dismiss arguing that the plaintiff lacked standing because he failed to allege a concrete and particularized injury. *Id*. The district court granted the defendant's motion, but the Court of Appeals for the Ninth Circuit reversed. *Id*. The Supreme Court granted certiorari to decide whether plaintiff's alleged violations of his statutory rights were sufficient to satisfy the injury-in-fact requirement of Article III. *Id*.

The Supreme Court emphatically held that even in the context of a statutory violation, Article III standing requires a concrete injury. *Id*. at 1549. The Supreme Court focused on the injury-in-fact requirement of Article III standing—the "'[f]irst and foremost' of standing's three elements." *Id*. at 1547 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)). The Court noted that "to establish [an] injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and "actual or imminent, not conjectural or hypothetical." *Id*. at 1548 (quoting *Lujan* 504 U.S. at 560). The Court emphasized that the "concrete" and "particularized" requirements are two distinct concepts, and federal courts must analyze them separately. *Id*. While "[p]articularization is necessary to establish injury in fact . . . it is not sufficient. An injury in fact

must also be 'concrete.'" *Id*. at 1548.  The Court noted that "A 'concrete' injury must be 'de facto';

that is, it must *actually* exist."  *Id*. (emphasis added).

### D.      FDCPA Legal Standard

Congress enacted the FDCPA "to 'eliminate abusive debt collection practices by debt

collectors, to insure that those debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent State action to protect

consumers against debt collection abuses.'" *See Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir.

2002) (*citing* 15 U.S.C. § 1692(e)).  "The legislative history of the passage of the FDCPA explains

that the need for the FDCPA arose because of collection abuses such as use of 'obscene or profane

language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a

consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an

employer, obtaining information about a consumer through false pretense, impersonating public

officials and attorneys, and simulating legal process." *See Kropelnicki*, 290 F.3d at 127 (*citing* S.

Rep. No. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696).  Accordingly, it is a

violation of the FDCPA to use "any false, deceptive, or misleading representation or means in

connection with the collection of any debt."  15 U.S.C. § 1692e.  This includes the "use of any

false representation or deceptive means to collect or attempt to collect any debt."  15 U.S.C. §

1692e(10).

The United States Court of Appeals for the Second Circuit has adopted a "least-

sophisticated consumer" standard in analyzing liability under the FDCPA. *See Clomon v. Jackson*,

988 F.2d 1314, 1318 (2d Cir. 1993).  The standard is an objective analysis that "seeks to protect

'the naive' from abusive practices while simultaneously shielding debt collectors from liability for

"bizarre or idiosyncratic interpretations" of debt collection letters. *See Greco v. Trauner, Cohen,*

11

& *Thomas*, *L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) (citations omitted); *see Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998).  The Second Circuit has held that the "least sophisticated consumer does not need to have even the sophistication of the average, every day, common consumer, but is neither irrational nor a dolt."  *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010).  The least sophisticated consumer "is not a gifted linguist who closely parses a debt collection letter like a Wall Street lawyer analyzes a municipal bond offering or like a patent lawyer construes a patent."  *See Koehn v. Delta Outsource Grp.*, No. 18-c-1084, 2018 WL 6590617, at *6 (E.D. Wis. Dec. 14, 2018).  The Second Circuit has "made clear that in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness."  *See McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 190-91 (2d Cir. 2002) (*quoting Clomon*, 988 F.2d at 1319).  Indeed, with regard to the least sophisticated consumer standard, the Second Circuit has warned against "conflat[ing] lack of sophistication with unreasonableness."  *See Ellis*, 591 F.3d at 135.  Further, the court will assume the least sophisticated consumer makes "reasonable and logical deductions and inferences."  *Dewees v. Legal Serv., LLC*, 506 F. Supp. 2d 128, 132 (E.D.N.Y. 2007).  The least sophisticated consumer also must read a letter in its entirety.  *See McStay*, 308 F. 3d at 191.

The Second Circuit adopted a materiality requirement for FDCPA cases in *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018).  Put plainly, statements must be materially false or misleading to be actionable under the FDCPA.  *Id.*; *Perdomo v. Firstsource Advantage, LLC*, No. 19-CV-03546, 2019 WL 4085255, at *2 (E.D.N.Y. Aug. 28, 2019).  For a statement to be "material" it must be "capable of influencing the decision of the least sophisticated consumer."  *Cohen* 897 F. 3d at 85 (citing *Jensen v. Pressler & Pressler*, 791 F. 3d 413, 421 (3d Cir. 2015)).  The Second Circuit expounded on the materiality requirement again in *Gissendanner*

12

*v. Enhanced Recovery Co., LLC*, 793 F. App'x 5, 6 (2d Cir. 2019), stating: "We have also recently held that § 1692e incorporates a materiality requirement. Accordingly, 'mere technical falsehoods that mislead no one are immaterial and consequently not actionable under § 1692e.'" *Id.* (internal quotations omitted). The Second Circuit holds that adopting the materiality standard "furthers the dual purposes of the least sophisticated consumer standard: the need to protect unsuspecting consumers from unscrupulous debt collectors and the need to ensure that debt collectors are not held liable for unreasonable misinterpretations of collection notices." *Cohen* 897 F. 3d at 85-86 (quoting *Clomon*, 988 F.2d at 1319). "A letter is materially misleading if it 'explicitly misdirects consumers . . . to the wrong address.'" *Jacobs v. AllianceOne Receivables Mgmt., Inc.*, No. 19CV3447, 2020 WL 6273942, at *3 (E.D.N.Y. Oct. 26, 2020) (citations omitted).

Further, "[a] debt collector's notice violates Section 1692g if it fails to convey the required information 'clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights.'" *Illobre v. Fin. Recovery Servs.*, No. 16 CV 452, 2016 WL 6581332, at *6-7 (S.D.N.Y. Nov. 3, 2016) (quoting *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998)); *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008). "'When a notice contains language that overshadows or contradicts other language informing a consumer of her rights, it violates the Act.'" *Illobre*, 2016 WL 6581332, at *2 (quoting *Savino*, 164 F.3d at 85); *Jacobson*, 516 F.3d at 90 (A validation notice is not legally sufficient "if that notice is overshadowed or contradicted by other language in communications to the debtor.").

Courts within the Second Circuit have held that language in a collection letter is overshadowing or contradictory only if the language is reasonably susceptible to an inaccurate reading, or, if the language would make the least sophisticated consumer uncertain as to her rights under the FDCPA. *See Vayngurt v. Sw. Credit Sys., L.P.*, No. 16-cv-2261, 2016 WL 6068132, at

13

*12 (E.D.N.Y. Oct. 14, 2016); *see also Weber v. Computer Credit, Inc.*, 259 F.R.D. 33, 38

(E.D.N.Y. June 30, 2009).  Specifically, the validation notice must include:

> (1) the amount of the debt;

> (2) the name of the creditor to whom the debt is owed;

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g.

"Significantly, courts in this Circuit have held that 'the standard for determining a violation

of § 1692e(10) is essentially the same as that for § 1692g.'" *Papetti v. Rawlings Fin. Servs., LLC*,

121 F. Supp. 3d 340, 353 (S.D.N.Y. Aug. 5, 2015) (quoting *Foti v. NCO Fin. Sys., Inc.*, 424 F.

Supp. 2d 643, 666 (S.D.N.Y. 2006)); *see also Tipping-Lipshie v. Riddle*, No. CV 99–4646, 2000

WL 33963916, at *4 (E.D.N.Y. Mar. 2, 2000); *Vera v. Trans-Cont'l Credit & Collection Corp.*,

No. 98 CIV. 1866, 1999 WL 163162, *3-4 (S.D.N.Y. Mar. 24, 1999) (finding that a misleading

collection letter violates Sections 1692g(a)(3) and 1692e(10) for "essentially the same reasons).

### E.    The Doctrine of the Law of the Case Does Not Apply.

Plaintiff incorrectly argues that the "law of the case" or similar doctrine precludes the court

from entertaining Penn Credit's Motion for Summary Judgment and entitles Plaintiff to summary

14

judgment.  (Doc. 35 at 1-2, 4, 7-10).  Plaintiff's argument lies contrary to the case law of this jurisdiction and Your Honor's prior decision denying Penn Credit's Motion to Dismiss.

On February 1, 2021, Your Honor denied Defendant's Motion to Dismiss.  (Doc. 20).  At that time, Your Honor recognized that additional evidence would clarify whether the confusion was material, indicating that the matter may be appropriate for summary judgment after the exchange of discovery. Specifically, Your Honor stated, as circumstances inviting summary judgment:

> For example, 'if it was possible for a consumer to send a dispute to any of the [two] addresses and have it properly processed, the [Payment] [L]etter would not be materially misleading.'

(Doc. 13 at 14) (citations omitted).

Penn Credit has now presented through the sworn Affidavit of Penn Credit and Declaration of RevSpring attached to Penn Credit's Motion for Summary Judgment and this Opposition that Plaintiff's dispute, correspondence, or payment would have been properly processed at either of the two addresses set forth on the Letter.  (Docs. 29-1 and 29-2; SAMF at ¶¶21-24).  Accordingly, the facts and circumstances have in fact changed, and the law of the case would not apply to the Court's denial of Defendant's Motion to Dismiss.  To the contrary, because a ruling in favor of a plaintiff on a motion to dismiss does not address the merits of a case, such ruling will not preclude a subsequent ruling in favor of a defendant on the same issue on a motion for summary judgment following discovery. *Nobel Ins. Co.*, 2006 WL 2848121, at *4. Accordingly, Plaintiff's Motion for Summary Judgment should be denied on the grounds of the "law of the case" or similar doctrine.

15

### F.        Plaintiff Lacks Standing.

Plaintiff lacks Article III standing because he has only alleged a bare procedural violation of the FDCPA divorced from any real harm.  *See Spokeo, Inc.*, 136 S. Ct. at 1546.  The Second Circuit requires a plaintiff to "satisfy a two-part test for a [procedural violation] to constitute a concrete harm: first, that "Congress conferred the procedural right to protect plaintiff's concrete interests" as to the harm in question, and second, that "the procedural violation presents a 'real risk of harm' to that concrete interest."  *Katz v. Donna Karan Company, L.L.C.*, 872 F. 3d 114, 119 (2d Cir. 2019) (quoting *Strubel v. Comenity Bank*, 842 F. 3d 181, 190 (2d Cir. 2016)).  Plaintiff fails to meet this as he cannot demonstrate any real risk of harm because any correspondence, including a dispute or request for the original creditor, or a payment sent to either address would have been received by Penn Credit.

Numerous courts have recently held that confusion alone is not sufficient to constitute a concrete injury.  In *Casillas v. Madison Ave. Assocs.*, the Seventh Circuit Court of Appeals made clear who does and does not have Article III Standing "[t]he bottom line of our opinion can be succinctly stated: no harm, no foul."  *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 331 (7ᵗʰ Cir. 2019).  In *Casillas*, the defendant sent the plaintiff a debt collection letter describing the debt verification process but "neglected to specify that she had to communicate in writing to trigger the statutory protections."  *Id.* at 2.  The Seventh Circuit found that this was insufficient to establish Article III standing:

> The only harm that Casillas claimed to have suffered, however, was the receipt of an incomplete letter – and that is insufficient to establish federal jurisdiction.  As the Supreme Court emphasized in *Spokeo, Inc. v. Robins*, Casillas cannot claim a "bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  136 S.Ct. 1540, 1549 (2016).  Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.  ***Because***

16

> ***Madison's violation of the statute did not harm Casillas, there is no injury for a federal court to redress.***

*Id.* (emphasis added).

This analysis of standing has continued through decisions issued by the Seventh Circuit in *Larkin v. Finance System of Green Bay, Inc.*, No. 18-3582, 2020 WL 7332483, at *3-4 (7th Cir. Dec. 14, 2020) (the court upheld a motion to dismiss an FDCPA claim finding no concrete injury sufficient for standing when the plaintiff argued the collection letter's references to preserving a good credit rating were misleading and unfair); *Brunett v. Convergent Outsourcing, Inc.*, 982 F. 3d 1067, 1068 (7th Cir. 2020) *reh'g denied* (Jan. 11, 2021) (finding that a plaintiff alleging confusion due to a collection letter stating that there would be possible reporting of debt forgiveness to the IRS lacked standing); and *Nettles v. Midland Funding LLC*, No. 19-3327, 2020 WL 7488610, at *2-3 (7th Cir. Dec. 21, 2020) (finding that a balance listed on a collection letter that was higher than what was owed did not constitute an injury sufficient to grant Article III standing because the plaintiff did not suffer any actual harm).

In *Brunett*, the plaintiff received a collection letter demanding repayment of a debt slightly exceeding $10,000. *Brunett*, 982 F. 3d at 1067-68. The collection letter stated that if the creditor ultimately forgave an amount exceeding $600, it would have to report the debt forgiveness to the IRS as taxable income to the plaintiff. *Id.* at 1067. The plaintiff brought suit under the FDCPA alleging the letter was intimidating and confusing. *Id*. at 1068. The Seventh Circuit held that in order to constitute a concrete injury, a consumer confused by a collection letter must act to her detriment on that confusion and held that "the state of confusion is not itself an injury." *Id.* (emphasis added). The Court explained that only people who can show personal, concrete injuries may bring litigation and that adding the word "intimidating" to plaintiff's claims of confusion does not change the analysis. *Id*. at 1069. The requirement of a concrete injury is a constitutional

17

requirement that prevents federal judges from giving what amounts to advisory opinions. *Id*. ("Many people think that an advisory opinion will set their minds at ease but hiring a lawyer in quest of a judicial answer does not permit a federal court, operating under Article III, to give that answer.").

Other Circuit Courts have ruled similarly, with the Eleventh Circuit adopting the same reasoning and holding that "there can be no recovery if the plaintiff is none the worse off for the misrepresentation, however flagrant it may have been." *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 997 (11ᵗʰ Cir. 2020) (citation omitted); *see also Daniels v. Aldridge Pite Haan, LLP*, No. 5:20-CV-00089-TES, 2020 WL 3866649, *2-4 (M.D. Ga. July 8, 2020) ("the FDCPA . . . is not a sword to be wielded to force defendants to pay plaintiffs who have not suffered."). The Ninth Circuit has held that "[w]ithout more, confusion does not constitute an actual harm to [a plaintiff's] concrete interests." *Adams v. Skagit Bonded Collectors, LLC*, 836 Fed. Appx. 544, 547 (9ᵗʰ Cir. 2020) ("Because the argument that he might have relied on the allegedly misleading statements to his detriment is entirely conjectural or hypothetical without additional factual allegations, Adams has not adequately pleaded a material risk of injury") (internal quotations omitted).

In *Trichell*, the plaintiffs filed FDCPA class actions after receiving collection letters relating to time-barred debt. *Trichell*, 964 F. 3d at 994-95. The plaintiffs alleged these letters were misleading and unfair, in violation of the FDCPA, in falsely suggesting plaintiffs could be sued or that the debt could be reported to credit-rating agencies. *Id*. at 995. Significantly, the plaintiffs only alleged that the "letters they received created a risk that unsophisticated consumers might be misled into making unnecessary or even harmful payments on time-barred debt. *Id.* at 1000.

The U.S. Court of Appeals for the Eleventh Circuit dismissed the cases and held that the plaintiffs lacked a concrete, injury-in-fact, sufficient to confer Article III standing. *Id*. at 1005.

18

The court noted that the plaintiffs did not allege they suffered any tangible injury, such as making a payment in response to the letters but relied only on intangible injuries in the form of alleged FDCPA violations. *Id.* at 999-1000. The court found that plaintiff's alleged intangible injuries were also insufficient to confer Article III standing because plaintiffs were unable to prove that they were even misled by the letters or that they relied on the letters. *Id*. at 1002. The court also rejected the plaintiffs' claims that they suffered informational injuries with respect to the letters. *Id*. at 1003. "Even if [the plaintiffs] were placed at risk of being defrauded when they received their collection letters, the risk never materialized, had dissipated before the complaints were filed, and cannot possibly threaten any future concrete injury." *Id*.

Most recently, the Southern District of Indiana addressed this same type of alleged "confusion injury" in *Pucillo v. National Credit Systems, Inc.*, No. 1:19-cv-00285-TWP, 2021 WL 1061191, at *3-4 (S.D. Ind. Mar. 19, 2021). The plaintiff alleged that a debt collector had attempted to collect a debt that had been discharged in bankruptcy. *Id*. at *1. The defendant mailed the plaintiff two collection letters attempting to collect the discharged debt, which confused plaintiff as to whether the debt had actually been discharged and concerned him because of the potential impact on his credit. *Id*. The plaintiff argued he suffered a concrete injury by means of "confusion and concern as to whether he would have to pay this debt, whether it was adequately included in his bankruptcy, and how it would impact his credit." *Id*. at *4. The court granted summary judgment to the defendant due to plaintiff's lack of standing. *Id*. The court stated "[t]he Seventh Circuit has been clear that, without more, confusion, stress, concern, and fear are not enough to support a concrete injury in FDCPA Section 1692e and 1692c cases." *Id*.

These cases all demonstrate that even if there was a violation of the FDCPA in this case, which there is not, Plaintiff has failed to show a concrete any concrete injury in fact, which is

19

required for standing.  *See Spokeo, Inc.*, 136 S. Ct. at 1548; *Brunett*, 982 F. 3d at 1067-1069; *see also Trichell*, 964 F. 3d at 1004-05; *Adams*, 836 Fed. Appx. at 547; *Larkin*, 2020 WL 7332483 at *3-4.  Plaintiff has failed to allege or submit any evidence that he ever attempted to mail anything to Penn Credit.  (Doc. 1-1, Exhibit C; Doc. 36).  Penn Credit never received any correspondence or payments from Plaintiff.  (SAMF at ¶¶ 25-26).  Had Plaintiff attempted to send any correspondence, including a dispute or a request for the original creditor, or a payment to Penn Credit, it would have been received and processed regardless of which of the addresses printed on the June 19, 2019 Letter Plaintiff used.  (SAMF at ¶¶ 21-24).  There is absolutely nothing to support any concrete injury in this case.  Accordingly, this Court should find that Plaintiff lacks standing under Article III of the U.S. Constitution and deny Plaintiff's Motion for Summary Judgment.

> **G.      The Letter Does Not Violate the FDCPA as a Matter of Law**

Plaintiff is not entitled to summary judgment because the formatting and content of the June 19, 2019 Letter are clear as to which address should be used for mailing correspondence and payments.  Courts have addressed this issue on several occasions and held that a collection letter including multiple addresses is not, by itself, a violation of the FDCPA.  *See e.g; Park v. Forster & Garbus, LLP*, No. 19-CV-3621, 2019 WL 5895703, at *4-5 (E.D.N.Y. Nov. 12, 2019) (granting defendant's motion to dismiss in multiple address FDCPA claim when return address was emphasized by a prominent arrow and written instructions); *Saraci v. Convergent Outsourcing, Inc.*, No. 18-CV-6505, 2019 WL 1062098, at *2-3 (E.D.N.Y. Mar. 6, 2019) (granting summary judgment to defendant in a multiple address FDCPA claim when only one address was included on the detachable payment slip).  Instead, the viability of a multiple address claim under the FDCPA turns on a fact specific analysis of whether the format and content of a specific letter could

20

lead to confusion and whether the possibility of that confusion is material. *See Musarra v. Balanced Healthcare Receivables, LLC*, No. 19CV5814-ARR-RML, 2020 WL 1166449 at \*4-6 (E.D.N.Y. Mar. 11, 2020) (denying the defendant's motion to dismiss a claim involving multiple address and noting that if it was possible for a consumer to send a dispute to any of the three addresses printed on the letter, and have it properly processed, the letter would not be materially misleading).

The June 19, 2019 Letter is not ambiguous or confusing nor does it overshadow Plaintiff's rights under Section 1692g. The formatting of the June 19, 2019 Letter makes it clear to which address a dispute, request for the original creditor, or a  payment should be directed. (Doc. 1-1, Exhibit C). The envelope containing the June 19, 2019 Letter contained two glassine windows, the top left of which displayed RevSpring's Oaks, PA Address, which is used for return mail. (SAMF at ¶ 16). The detachable payment slip includes three addresses: a return address in the top-left corner, which is the Oaks, PA Address, Plaintiff's address, and Penn Credit's remittance address, which is the Harrisburg, PA Address, in the bottom left corner. (SAMF at ¶¶ 12-15). When the payment slip is inserted into the provided return envelope, the Harrisburg, PA Address is the only address that is visible. (SAMF at ¶ 20); *see Saraci*, 2019 WL 1062098, at \*3 (E.D.N.Y. Mar. 6, 2019) ("to boot, the collection letter includes a return envelope which, unless ignored or misused in some fashion, ensures dispatch of the communication to the proper address"). Thus, a payment or correspondence can only be sent to the Harrisburg, PA Address.

This Court should reject Plaintiff's argument that there is an FDCPA violation if the consumer is confused about how to respond to a letter at the time when the consumer receives the letter. (Doc. 35 at pp. 1-2, 10). This incorrect as the standard is whether any such confusion was material. *Cohen*, 897 F.3d at 85; *Perdomo*, 2019 WL 4085255, at \*2. The facts of this case show

21

that even if there was any confusion about which address to use, Plaintiff has failed to demonstrate that such confusion was material. *See Musarra*, 2020 WL 1166449, at *6. There is no dispute that the Oaks, PA Address belongs to RevSpring and serves as its return mail address. (SAMF at ¶ 15). RevSpring's practice is to forward any payment or correspondence sent to the Oaks, PA Address on to Penn Credit. (SAMF at ¶¶ 21-24). RevSpring promptly forwards mail to Penn Credit. (SAMF at ¶ 24). Therefore, regardless of whether a consumer sends any correspondence, including a dispute or a request for original creditor, or a payment directly to the Harrisburg, PA Address or to the Oaks, PA Address, the result is the same as Penn Credit would ultimately receive all such payments and correspondence. (SAMF at ¶¶ 21-24). Accordingly, there is no overshadowing because Plaintiff could have exercised his rights under Section 1692g by sending any correspondence or payments to either address and it would be received by Penn Credit. (SAMF at ¶¶ 21-24).

In *Gansburg v. Credit Control, LLC*, the plaintiff conceded a dispute sent to either address printed on the challenged letter would have ultimately reached the defendant but argued this fact was irrelevant in determining liability. No. 18-CV-5054-FB-ST, 2020 WL 1862928, at *1 (E.D.N.Y. Feb. 27, 2020); (Doc. 20 at pg. 13). The court disagreed, noting a collection letter is deceptively ambiguous only "when it can be reasonably read to have two or more different meanings, *one of which is inaccurate*." 2020 WL 1862928 at *1 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) (emphasis added)). The court's reasoning applies directly here. No reading of the June 19, 2019 Letter can be inaccurate because Penn Credit would have and will receive all correspondence and payments that are sent to the Harrisburg, PA Address and the Oaks, PA Address. (SAMF at ¶¶ 21-24).

The only time this Court has called into question the materiality requirement as applied in *Musarra* and *Gansburg* was in *Pinyuk v. CBE Grp., Inc.*, No. 17CV5753-RRM-CLP, 2019 WL 1900985, at \*7 (E.D.N.Y. Apr. 29, 2019).   In *Pinyuk*, the court dismissed the defendant's materiality argument where it claimed plaintiff could have mailed the letter to any of the addresses in the letter and they would have been received by the defendant.  *Id*.  However, *Pinyuk* is distinguishable both on the procedural posture and the facts.  *Pinyuk* was decided before *Musarra* and *Gansburg* in the context of a motion to amend the complaint and the court's analysis was limited to whether the assertion of such a claim would be futile.  *Id*.  The court in *Pinyuk* was persuaded by the plaintiff's claim that the confusion caused by the multiple addressees caused her not to send a dispute letter she otherwise would have mailed to the defendant.  *Id*.  However, in this case Plaintiff has not and cannot prove that the potential for confusion actually harmed him by preventing him from taking any action.  (Doc. 1 at ¶¶ 77-80, 83-87, 103-105; Doc. 36).  To the contrary, Penn Credit never received any correspondence or payments from Plaintiff. (SAMF at ¶¶ 25-26).

## IV.   CONCLUSION

For all of the above reasons, Defendant Penn Credit Corporation respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure.

Respectfully Submitted:
**KAUFMAN DOLOWICH & VOLUCK, LLP**
By:   /s/ Richard J. Perr
RICHARD J. PERR, ESQUIRE
Four Penn Center
1600 John F. Kennedy Blvd, Suite 1030
Philadelphia, PA 19103
(v) 215.501.7002; (f) 215.405.2973
rperr@kdvlaw.com
Dated:  May 18, 2021      Attorneys for Defendant Penn Credit Corporation

23

## CERTIFICATE OF SERVICE

I, RICHARD J. PERR, ESQUIRE, hereby certify that on or about this date, I served a

true and correct copy of the foregoing electronically via CM/ECF on the following:

Craig B. Sanders, Esq.
Jonathan Mark Cader, Esq.
Barshay Sanders, PLLC
100 Garden City Plaza, 5th Floor
Garden City, NY 11530
csanders@barshaysanders.com
jcader@barshaysanders.com
Attorneys for Plaintiff Naftali Schmelczer


/S/ Richard J. Perr
RICHARD J. PERR, ESQUIRE


Dated:  May 18, 2021


4838-5657-4954, v. 1

24