**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | |
| NAFTALI SCHMELCZER, individually and on behalf of all others similarly situated, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | NO. 7:20-cv-02380-KMK |
| | : | |
| PENN CREDIT CORPORATION, | : | |
| | : | JURY TRIAL DEMANDED |
| Defendant. | : | |
| | : | |

**DEFENDANT CREDIT CORPORATION'S**
**REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, Penn Credit Corporation ("Defendant" or "Penn Credit"), through its undersigned counsel, submits this this Reply in Support of its Motion for Summary Judgment under Fed. R. Civ. P. 56. For all of the reasons expressed below, this Court should grant Penn Credit's Motion for Summary Judgment and reject all of Plaintiff, Naftali Schmelczer's ("Plaintiff") claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA").

**TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ..................................................................................................... 2

II.    LEGAL ARGUMENT ............................................................................................... 3

    A.  Plaintiff Lacks Standing to Pursue this Claim Under Article III of the U.S.
       Constitution.................................................................................................... 3

    B.  The Letter Does Not Violate the FDCPA as a Matter of Law ....................................... 6

III.    CONCLUSION...................................................................................................... 10

i

**TABLE OF AUTHORITIES**

**PAGE**

**Cases**

*Adams v. Skagit Bonded Collectors, LLC*,
  836 Fed. Appx. 544 (9th Cir. 2020)................................................................ 6
*Brunett v. Convergent Outsourcing, Inc.*,
  982 F. 3d 1067 (7th Cir. 2020)...................................................................... 6
*Campagna v. Client Servs.*,
  No. 18-cv-3039, 2019 U.S. Dist. LEXIS 208164 (E.D.N.Y. Dec. 3, 2019) .............................. 9
*Gansburg v. Credit Control, LLC*,
  No. 18-CV-5054-FB-ST, 2020 WL 1862928 (E.D.N.Y. Feb. 27, 2020)................................ 7, 8
*Greco v. Trauner, Cohen, & Thomas*, *L.L.P.*,
  412 F.3d 360 (2d Cir. 2005)........................................................................ 9
*Katz v. Donna Karan Company, L.L.C.*,
  872 F. 3d 114, 119 (2d Cir. 2019)................................................................. 3
*Larkin v. Finance System of Green Bay, Inc.*,
  No. 18-3582, 2020 WL 7332483 (7th Cir. Dec. 14, 2020) ........................................... 6
*Maddox v. Bank of New York Mellon Tr. Co.*,
  __F.3d __ (2021), No. 19-1774, 2021 WL 1846308 (2d Cir. May 10, 2021) ...... 2, 3, 4, 5, 6, 10
*Maguire v. Citicorp Retail Servs., Inc.*,
  147 F.3d 232 (2d Cir. 1998)........................................................................ 9
*Musarra v. Balanced Healthcare Receivables, LLC*,
  No. 19CV5814ARRRML, 2020 WL 1166449 at *4-5 (E.D.N.Y. Mar. 11, 2020)............. 7, 8, 9
*Navon v. Schachter Portnoy, L.L.C.*,
  No. 19-CV-63, 2019 U.S. Dist. LEXIS 155175, at *11-12 (E.D.N.Y. Sept. 11, 2019) ......... 5, 6
*Park v. Forster & Garbus, LLP*,
  No. 19-CV-3621, 2019 WL 5895703, at *4-5 (E.D.N.Y. Nov. 12, 2019)................................ 8
*Pinyuk v. CBE Grp., Inc.*,
  No. 17CV5753-RRM-CLP, 2019 WL 1900985 (E.D.N.Y. Apr. 29, 2019) ............................... 8
*Russell v. Equifax A.R.S.*,
  74 F.3d 30 (2d Cir. 1996)........................................................................ 7, 8
*Saraci v. Convergent Outsourcing, Inc.*,
  No. 18-CV-6505, 2019 WL 1062098, at *2-3 (E.D.N.Y. Mar. 6, 2019).................................. 9
*Spokeo, Inc. v. Thomas Robins*,
  136 S. Ct. at 1546 (2016) ..................................................................... 3, 4, 5, 6, 10
*Strubel v. Comenity Bank*,
  842 F. 3d 181, 190 (2d Cir. 2016)................................................................ 3, 5
*Trichell v. Midland Credit Mgmt.*,
  964 F. 3d 990, 1004-05 (11th Cir. 2020) ........................................................... 6

**Statutes**

15 U.S.C. § 1692.................................................................................................................... 1, 2
15 U.S.C. § 1692e. ................................................................................................................... 6
15 U.S.C. § 1692g.................................................................................................................. 6, 7

**Rules**

Fed. R. Civ. P. 56................................................................................................................ 1, 10

**Other Authorities**

N.Y. Real P. Law ("R.P.L.") § 275, N.Y. Real P. Actions & Proc. L. § 1921 ................................ 4

## I.     INTRODUCTION

Plaintiff, in his opposition, is doing nothing more than trying to manufacture an FDCPA claim where none exists.  The facts in this case are simple.  Plaintiff claims that Defendant's letter, which included two addresses, was confusing because he did not know which address to use to send in a payment to Defendant, and he seeks damages against Penn Credit under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), for sending him a purportedly misleading letter on this basis.  Plaintiff has failed to present any evidence that he ever attempted to mail anything to Penn Credit, nor does he dispute he owed the debt.  Plaintiff has merely alleged a procedural violation of the FDCPA that is divorced from any concrete harm.  Plaintiff now incorrectly argues that he has Article III standing to bring this action despite alleging-- at best-- a procedural violation divorced from harm, citing to the recent decision in *Maddox v. Bank of New York Mellon Tr. Co.*, __F.3d __ (2021), No. 19-1774, 2021 WL 1846308 (2d Cir. May 10, 2021). Contrary to Plaintiff's argument, *Maddox* does not hold that any procedural defect gives rise to standing to bring a claim under the FDCPA.  Plaintiff's reliance is overreaching, and he does not have Article III standing under the U.S. Constitution to bring this action under *Maddox*, warranting summary judgment in favor of Defendant.

Plaintiff's argument that the challenged collection letter was materially misleading or that there was any overshadowing under the FDCPA also fails.  Penn Credit would have received and processed a payment that was sent to either of the addresses listed on the letter or the letter could have possibly been returned, causing him no substantive or cognizable injury.  For all of these reasons, and those set forth in Penn Credits original Motion for Summary Judgement this Court

should find that there are no undisputed material facts and grant Summary Judgment in favor of Defendant.\\[1]

## II.    LEGAL ARGUMENT

### A.    Plaintiff Lacks Standing to Pursue this Claim Under Article III of the U.S. Constitution

Plaintiff lacks Article III standing because he has only alleged a bare procedural violation of the FDCPA divorced from any real harm. *See Spokeo, Inc.*, 136 S. Ct. at 1546.  The Second Circuit requires a plaintiff to "satisfy a two-part test for a [procedural violation] to constitute a concrete harm: first, that "Congress conferred the procedural right to protect plaintiff's concrete interests" as to the harm in question, and second, that "the procedural violation presents a 'real risk of harm' to that concrete interest." *Katz v. Donna Karan Company, L.L.C.*, 872 F. 3d 114, 119 (2d Cir. 2019) (quoting *Strubel v. Comenity Bank*, 842 F. 3d 181, 190 (2d Cir. 2016)).  Plaintiff fails to meet this as he cannot demonstrate any real risk of harm because a payment sent to either address would have been received by Penn Credit.

Plaintiff relies on the recent case *Maddox v. Bank of New York Mellon Tr. Co*., __F.3d __ (2021), No. 19-1774, 2021 WL 1846308 (2d Cir. May 10, 2021), for the proposition that a procedural violation satisfies the requirement that a plaintiff must have suffered a concrete harm; however, Maddox is distinguishable and would support a finding that Plaintiff does not have standing under the circumstances of this case because he has neither suffered nor is he at risk of harm. Further, Plaintiff's interpretation of Maddox is overreaching.

In *Maddox*, the Court considered whether the plaintiff had Article III standing to seek statutory damages from the defendant Bank for its violations of New York's mortgage-

---

[1]/    Counsel for Plaintiff represented to this Court during a conference on February 25, 2021 that Plaintiff is not pursuing his class action claims.

satisfaction-recording statutes.  N.Y. Real P. Law ("R.P.L.") § 275, N.Y. Real P. Actions & Proc. L. § 1921.  These statutes require mortgage lenders to record satisfactions of mortgage within thirty days of the borrower's repayment; a failure renders the lender "liable to the mortgagor" for increasing statutory damages in amounts dependent on the tardiness of the ultimate filing.  The defendant Bank did not record the satisfaction of the plaintiffs' mortgage, in an amount of over $50,000, until almost eleven months after full payment was received—almost ten months after the law requires.  The Court determined that the plaintiffs' complaint supports a plausible inference that the Bank's violation both (1) harmed their financial reputations during the nearly ten-month period of the Bank's noncompliance with the thirty-day filing deadline, and, relatedly, (2) created a material risk of particularized harm to them during that period by impairing their credit and limiting their borrowing capacity. The Court expressly determined plaintiffs' injury to be a claimed substantive rather than procedural injury, pointing to the restrictions of plaintiffs' borrowing capacity caused by the debt appearing for the extended period of time in the public records as a real risk of material harm, substantially restricting plaintiffs' borrowing capacity.  The Court held these particularized actual harms and risks of harm and their general recognition in the common law, gave plaintiffs Article III standing to pursue their claims. *Maddox*, 1846308 at \*6.  The Court specifically found the satisfaction-of-mortgage statutes as substantive provisions that protect concrete interests of a type traditionally recognized and protected at common law—not mere "procedural" rights which, if violated, must be accompanied by further allegations of harm before a concrete injury is established. *Maddox*, 1846308 at \*8.

The Court discussed that there do exist certain situations—but not all situations-- where a procedural rather than substantive violation can establish Article III standing, consistent with *Spokeo*:

> Although under *Spokeo*'s teachings "a bare procedural violation, divorced from any    concrete harm" does not satisfy the injury-in-fact requirement of Article III, "the violation of a procedural right granted by statute can be sufficient *in some circumstances* to constitute injury in fact," such as when the violation presents a "material risk of [concrete]    harm." 136   S.   Ct.   at   1549-50. Tellingly here, the Supreme Court has instructed that "a plaintiff in such a case"—that is, where a material risk of concrete harm is presented—"need not allege any *additional* harm beyond the one [the legislature] has identified." *Id.*    at 1549; *see also Strubel*, 842 F.3d at 189. The threatened harm here satisfies Article III,   even  if the threat did not eventuate.

*Maddox*, 1846308 at *8 (emphasis added).

The Court expressly distinguished its holding from *Spokeo* and its progeny in the context of claims brought under the FDCPA:

> This is why we see the harm alleged by the Maddoxes here and addressed by the statute as of a different quality—substantive, not procedural—than those that are the focus of *Cohen* and *Strubel*, informative as those decisions are about the application of *Spokeo*'s standards. *Spokeo*'s dismissal of an action based on the credit agency's mistaken report of a consumer's zip code (a procedural error of sorts) bears little resemblance to a bank's allowing the authoritative public record to continue to reflect an ordinary consumer's $50,000 debt that has been repaid in full.

*Maddox*, 1846308 at *12.

The *Maddox* Court's decision remains consistent with the numerous other courts that have recently held that confusion alone is not sufficient to constitute a concrete injury.  Clearly, under the factors used in *Maddox*, Plaintiff does not have Article III standing as he has suffered no substantive or risk of the types of harm contemplated by the Court. Indeed, the Court expressly distinguished the type of procedural error that Plaintiff claims gives him standing to pursue this action. Federal courts hearing FDCPA claims routinely grant motions to dismiss over immaterial claims, where plaintiffs only allege they *might* have suffered harm or *may* suffer harm in the future. *See Navon v. Schachter Portnoy, L.L.C.*, No. 19-CV-63, 2019 U.S. Dist. LEXIS 155175, at *11-

5

12 (E.D.N.Y. Sept. 11, 2019) (dismissing Section 1692e claim as immaterial where the plaintiff alleged a collection letter *might* be used deceptively).

These cases all demonstrate that even if there was a violation of the FDCPA in this case, which there is not, Plaintiff has failed to show a concrete injury in fact, or risk of harm, which is required for standing.  *See Spokeo, Inc.*, 136 S. Ct. at 1548; *Brunett*, 2020 WL 7350277 at \*2; *see also Trichell*, 964 F. 3d at 1004-05; *Adams*, 836 Fed. Appx. at 547; *Larkin*, 2020 WL 7332483 at \*3-4; *Maddox*, 2021 WL at \*11.  The record fails to show that Plaintiff suffered an injury. Plaintiff has failed to allege or submit any evidence that he ever attempted to mail anything to Penn Credit. (Doc. 1-1, Exhibit C).  Penn Credit never received any correspondence or payments from Plaintiff. (SUMF at ¶¶ 25-26).  Had Plaintiff attempted to send any correspondence, including a dispute or a request for the original creditor, or a payment to Penn Credit, it would have been received and processed regardless of which of the addresses printed on the June 19, 2019 Letter Plaintiff used. (SUMF at ¶¶  21-24).  There is absolutely nothing to support any concrete injury in this case. Accordingly, this Court should find that Plaintiff lacks standing under Article III of the U.S. Constitution and grant Penn Credit's Motion for Summary Judgment.

B.      **The Letter Does Not Violate the FDCPA as a Matter of Law**

The June 19, 2019 Letter is not ambiguous or confusing nor does it overshadow Plaintiff's rights under Section 1692g.  The formatting of the June 19, 2019 Letter makes it clear to which address a dispute, request for the original creditor, or a payment should be directed.  (Doc. 1-1, Exhibit C).  The envelope containing the June 19, 2019 Letter contained two glassine windows, the top left of which displayed RevSpring's Oaks, PA Address, which is used for return mail. (SUMF at ¶ 16).  The detachable payment slip includes three addresses: a return address in the top-left corner, which is the Oaks, PA Address, Plaintiff's address, and Penn Credit's remittance

6

address, which is the Harrisburg, PA Address, in the bottom left corner. (SUMF at ¶¶ 12-15). When the payment slip is inserted into the provided return envelope, the Harrisburg, PA Address is the only address that is visible. (SUMF at ¶ 20). Thus, a payment or correspondence can only be sent to the Harrisburg, PA Address.

The facts of this case show that even if there was any confusion about which address to use, Plaintiff has failed to demonstrate that such confusion was material. *See Musarra*, 2020 WL 1166449, at *6. There is no dispute that the Oaks, PA Address belongs to RevSpring and serves as its return mail address. (SUMF at ¶ 15). RevSpring's practice is to forward any payment or correspondence sent to the Oaks, PA Address on to Penn Credit. (SUMF at ¶¶ 21-24). RevSpring promptly forwards mail to Penn Credit. (SUMF at ¶ 24). Therefore, regardless of whether a consumer sends any correspondence, including a dispute or a request for original creditor, or a payment directly to the Harrisburg, PA Address or to the Oaks, PA Address, the result is the same as Penn Credit would ultimately receive all such payments and correspondence. (SUMF at ¶¶ 21-24). If the payment were returned to sender, no harm would have occurred. Accordingly, there is no overshadowing because Plaintiff could have exercised his rights under Section 1692g by sending any correspondence or payments to either address, it would be received by Penn Credit. (SUMF at ¶¶ 21-24).

In *Musarra v. Balanced Healthcare Receivables, LLC*, the plaintiff conceded a dispute sent to either address printed on the challenged letter would have ultimately reached the defendant but argued this fact was irrelevant in determining liability. No. 18-CV-5054-FB-ST, 2020 WL 1862928, at *1 (E.D.N.Y. Feb. 27, 2020); (Doc. 20 at pg. 13). The court disagreed, noting a collection letter is deceptively ambiguous only "when it can be reasonably read to have two or more different meanings, *one of which is inaccurate*." 2020 WL 1862928 at *1 (quoting *Russell v.*

7

*Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) (emphasis added)).  The court's reasoning applies directly here. No reading of the June 19, 2019 Letter can be inaccurate because Penn Credit will receive all correspondence and payments that are sent to the Harrisburg, PA Address and the Oaks, PA Address.  (SUMF at ¶¶ 21-24).

The only time this Court has called into question the materiality requirement as applied in *Musarra* and *Gansburg* was in *Pinyuk v. CBE Grp., Inc.*, No. 17CV5753-RRM-CLP, 2019 WL 1900985, at *7 (E.D.N.Y. Apr. 29, 2019).  In *Pinyuk*, the court dismissed the defendant's materiality argument where it claimed plaintiff could have mailed the letter to any of the addresses in the letter and they would have been received by the defendant.  *Id*.  However, *Pinyuk* is distinguishable both on the procedural posture and the facts.  *Pinyuk* was decided before *Musarra* and *Gansburg* in the context of a motion to amend the complaint and the court's analysis was limited to whether the assertion of such a claim would be futile.  *Id*.  The court in *Pinyuk* was persuaded by the plaintiff's claim that the confusion caused by the multiple addressees caused her not to send a dispute letter she otherwise would have mailed to the defendant.  *Id*.

In this case Plaintiff has failed to allege or establish that the potential for confusion actually harmed him by preventing him from taking any action. (Doc. 1 at ¶¶ 77-80, 83-87, 103-105).  To the contrary, Penn Credit never received any correspondence or payments from Plaintiff. (SUMF at ¶¶ 25-26).

Summary Judgment is further appropriate because the formatting and content of the May 20, 2019 Letter are clear as to which address should be used for mailing payments.  Courts have addressed this issue on several occasions and held that a collection letter including multiple addresses is not, by itself, a violation of the FDCPA.  *See e.g; Park v. Forster & Garbus, LLP*, No. 19-CV-3621, 2019 WL 5895703, at *4-5 (E.D.N.Y. Nov. 12, 2019) (granting defendant's motion

8

to dismiss in multiple address FDCPA claim when return address was emphasized by a prominent arrow and written instructions); *Saraci v. Convergent Outsourcing, Inc.*, No. 18-CV-6505, 2019 WL 1062098, at *2-3 (E.D.N.Y. Mar. 6, 2019) (granting summary judgment to defendant in a multiple address FDCPA claim when only one address was included on the detachable payment slip).  Instead, the viability of a multiple address claim under the FDCPA turns on a fact specific analysis of whether the format and content of a specific letter could lead to confusion and whether the possibility of that confusion is material.  *See Musarra v. Balanced Healthcare Receivables, LLC*, No. 19CV5814ARRRML, 2020 WL 1166449 at *4-6 (E.D.N.Y. Mar. 11, 2020) (denying the defendant's motion to dismiss a claim involving multiple address and noting that if it was possible for a consumer to send a dispute to any of the three addresses printed on the letter, and have it properly processed, the letter would not be materially misleading).

Plaintiff's arguments typify the kind of bizarre and idiosyncratic interpretation of the Letter the least sophisticated consumer standard is meant to avoid. *See Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005); *see also Maguire v. Citicorp Retail Servs.*, 147 F.3d 232, 236 (2d Cir. 1998).  This Court should reject Plaintiff's bald attempts at creating FDCPA liability for this innocuous Letter, as this Letter is not the kind of harsh, deceptive, or abusive practices the FDCPA serves to weed out.  *See Campagna v. Client Servs.*, No. 18-cv-3039, 2019 U.S. Dist. LEXIS 208164, at *17-18 n.6 (E.D.N.Y. Dec. 3, 2019) (noting "[t]he Court is hard-pressed not to question whether this nuanced . . . claim, the only cause of action raised, is being pursued in the hopes of finding a new avenue to FDCPA violations . . . .").

The Court should take this opportunity to remind Plaintiff of the *true* purpose of the FDCPA: to prohibit nefarious debt collection conduct.  *See Campagna*, No. 18-cv-3039, 2019 U.S. Dist. LEXIS 208164, at *17-18 n.6 (observing "[s]adly, abuse of the statute . . . is fairly

9

widespread. . . . [T]he 'open to more than one reasonable interpretation[] [standard] . . . has turned FDCPA litigation into a glorified game of 'gotcha,' with a cottage industry of plaintiffs' lawyers filing suites over fantasy harms the statute was never intended to prevent.") (internal citations omitted).    Because the Letter fully complies with the FDCPA, and Plaintiff has suffered no substantive or procedural harm contemplated by *Spokeo* and *Maddox*, Penn Credit respectfully requests that the Court grant its Motion for Summary Judgment.

## III.    CONCLUSION

For all of the above reasons as well as those set forth in the original Motion, Defendant Penn Credit Corporation respectfully requests that this Court grant its Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure and dismiss Plaintiff's Complaint with prejudice.

Respectfully Submitted:

**KAUFMAN DOLOWICH & VOLUCK, LLP**

By:    /s/ Richard J. Perr
RICHARD J. PERR, ESQUIRE
MONICA M. LITTMAN, ESQUIRE
Four Penn Center
1600 John F. Kennedy Blvd, Suite 1030
Philadelphia, PA 19103
(v) 215.501.7002; (f) 215.405.2973
rperr@kdvlaw.com
mlittman@kdvlaw.com
Attorneys for Defendant Penn Credit Corporation

Dated:  June 1, 2021

10

## CERTIFICATE OF SERVICE

I, RICHARD J. PERR, ESQUIRE, hereby certify that on or about this date, I served a

true and correct copy of the foregoing electronically via CM/ECF on the following:


Craig B. Sanders, Esq.
Jonathan Mark Cader, Esq.
Barshay Sanders, PLLC
100 Garden City Plaza, 5th Floor
Garden City, NY 11530
csanders@barshaysanders.com
jcader@barshaysanders.com
Attorneys for Plaintiff Naftali Schmelczer


/s/ Richard J. Perr
RICHARD J. PERR, ESQUIRE


Dated:  June 1, 2021

11