UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NAFTALI SCHMELCZER, individually and
on behalf of all others similarly situated,

                              Plaintiff,

        v.

PENN CREDIT CORPORATION,

                              Defendant.

No. 20-CV-2380 (KMK)

OPINION & ORDER

Craig B. Standers, Esq.
Jonathan M. Cader, Esq.
Kara McCabe, Esq.
Barshay Sanders, PLLC
Garden City, NY
*Counsel for Plaintiff*

Richard J. Perr, Esq.
Kaufman Dolowich & Voluck, LLP
Philadelphia, PA
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Naftali Schmelczer ("Plaintiff") brings this putative class action against Penn

Credit Corporation ("Defendant"), alleging that Defendant engaged in unlawful credit and

collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

§§ 1692, et seq.  (*See* Compl. (Dkt. No. 1).)  Before the Court are Defendant's and Plaintiff's

Cross-Motions for Summary Judgment.  (*See* Def.'s Not. of Mot. (Dkt. No. 28); Pl.'s Not. of

Mot. (Dkt. No. 34).)  For the foregoing reasons, Defendant's Motion is granted and Plaintiff's

Motion is denied.

## I.  Background

### A.  Factual Background

The following facts are drawn from the Parties' statements pursuant to Local Rule 56.1, (*see* Def.'s Rule 56.1 Statement ("Def.'s 56.1") (Dkt. No. 29); Pl.'s 56.1 Statement ("Pl.'s 56.1") (Dkt. No. 37); Def.'s Rule 56.1 Counter-Statement ("Def.'s Counter 56.1") (Dkt. No. 43); Pl.'s Rule 56.1 Counter-Statement ("Pl.'s Counter 56.1") (Dkt. No. 48)), and the admissible evidence submitted by the Parties.  The facts as described below are in dispute only to the extent indicated.[1]

Plaintiff is "a citizen of the State of New York residing in Spring Valley, New York," and a "consumer" as defined by 15 U.S.C. § 1692(a)(3).  (Pl.'s 56.1 ¶¶ 1–2; Def.'s Counter 56.1

---

[1] Where the Parties "identify disputed facts but with semantic objections only or by asserting irrelevant facts, . . . which do not actually challenge the factual substance described in the relevant paragraphs, the Court will not consider them as creating disputes of fact."  *New Jersey v. N.Y.C. Dep't of Educ.*, No. 18-CV-6173, 2021 WL 965323, at *2 n.1 (S.D.N.Y. Mar. 15, 2021) (quotation marks omitted); *see also Nimkoff v. Drabinsky*, No. 17-CV-4458, 2021 WL 4480627, at *1 n.2 (E.D.N.Y. Sept. 30, 2021) ("[T]o the extent a party's Rule 56.1 statement improperly interjects arguments and/or immaterial facts in response to facts asserted by the opposing party without specifically controverting those facts [with admissible evidence], the [c]ourt has disregarded the statement." (quotation marks and alterations omitted)); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("Many of [the] [p]laintiff's purported denials—and a number of [the plaintiff's] admissions—improperly interject arguments and/or immaterial facts in response to facts asserted by [the] [d]efendant[], often speaking past [the] [d]efendant['s] asserted facts without specifically controverting those same facts. . . .  [A] number of [the] [p]laintiff's purported denials quibble with [the] [d]efendant['s] phraseology, but do not address the factual substance asserted by [the] [d]efendant[].").  Similarly, when a Party objects to the inclusion of a statement solely on the basis that the statement asserts a fact that is "immaterial," the Court will not consider this technicality as creating a dispute.  *See O'Donnell v. Card*, No. 11-CV-3297, 2013 WL 3929632, at *2 n.9 (S.D.N.Y. July 30, 2013) (deeming the plaintiff's "version of the facts admitted" where "[the] [d]efedant does not clearly deny these facts in his response, but rather claims that [the fact's inclusion] is 'immaterial' and fails to cite to the record").

Where possible, the Court has relied on the undisputed facts—or what the Court has deemed undisputed facts—in the Parties' 56.1 submissions.  However, direct citations to the record have also been used where relevant facts were not included in any of the Parties' Rule 56.1 submissions, or where the Parties did not accurately characterize the record.

¶¶ 1–2.)  Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).  (Pl.'s 56.1 ¶ 3;

Def.'s Counter 56.1 ¶ 3.)  As relevant to the instant dispute, Defendant contracts with

RevSpring—a company that provides document creation and delivery services for accounts

receivable management companies, healthcare organizations, banking institutions, municipal and

county governments, and telecommunication companies—to assist in its collection activities.

(Def.'s 56.1 ¶¶ 4–5.)

On or about June 18, 2019, Suez New York (a utility company) placed Plaintiff's

account, which at the time held a negative balance of $1,448.28, in collections with Defendant.

(Def.'s 56.1 ¶ 1; Pl.'s Counter 56.1 ¶ 1; *see also* Pl.'s 56.1 ¶¶ 4–5; Def.'s Counter 56.1 ¶¶ 4–5.)

On June 19, 2019, Defendant transmitted an electronic request to RevSpring to prepare and send

a collection letter to Plaintiff.  (Def.'s 56.1 ¶ 3.)  The following day, RevSpring sent Plaintiff a

letter, dated June 19, 2019, that sought to collect on Plaintiff's unpaid balance with Suez New

York on behalf of Defendant (the "Payment Letter").  (Def.'s 56.1 ¶ 6; Pl.'s Counter 56.1 ¶ 6;

*see also* Pl.'s 56.1 ¶¶ 6–7; Def.'s Counter 56.1 ¶¶ 6–7.)

> The Payment Letter states, in relevant part:
>
> Our client has referred your delinquent account(s) referenced below for collection. Our client is serious about collecting all monies owed [to] them and I am sure your intentions are to honor your debt.  Send payment using the enclosed envelope or you may go online to http://account.penncredit.com to make payment or  contact our office to pay over the phone.  Contact our office if you are unable to pay the amount due.  Unless you notify this office within 30 days after receiving this notice that you dispute the  validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.

(Def.'s 56.1 Ex. A ("Perrotta Aff.") (Dkt. No. 29-1), Ex. 2 ("Payment Letter").)  The Payment

Letter also notes that Plaintiff owed $1,448.28 for a "delinquent utility bill" with a "service date"

of May 17, 2019, and identifies "SUEZ New York" as the creditor.  (*Id.*)

The bottom portion of the Payment Letter is a detachable coupon (the "Coupon"), which states: "DETACH AND RETURN WITH PAYMENT TO EXPEDITE CREDIT TO YOUR ACCOUNT." (*Id.*) As relevant to the instant dispute, the Coupon contains three different mailing addresses. (*Id.*) The top-left corner of the Coupon lists the following address: "P.O. Box 1259, Department 91047, Oaks, PA 19456" (the "Oaks Address"). (*Id.*) The bottom-left corner of the Coupon lists an address for Plaintiff. (*Id.*) And, the bottom-right corner of the Coupon lists the following address: "PENN CREDIT, P[.]O[.] Box 69703, Harrisburg, PA 17106-9703" (the "Harrisburg Address"). (*Id.*) The Coupon also lists various instructions regarding different methods for how debtors may make payments. (*Id.*)

The Payment Letter also directs the recipient to the "reverse side for important information concerning your rights." (*Id.*) The reverse side reads:

> Please be advised that in accordance with the [FDCPA], debt collectors are prohibited from engaging in abusive, deceptive, and misleading debt collection efforts, including but not limited to: (i) the use or threat of violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse[,] or harass.

(*Id.*) This side of the Payment Letter also informs recipients—in this case, Plaintiff—about a debt collector's right to sue to collect the debt, but notes that certain state and federal laws protect certain types of income from attachment. (*See id.*) Finally, there is an additional notice made pursuant to New York state law. (*See id.*)

The Payment Letter was mailed in an envelope with two glassine windows such that the Oaks Address and Plaintiff's address were visible from the outside. (Def.'s 56.1 ¶¶ 16–17; *see also* Def.'s 56.1 Ex. B ("Astheimer Decl.") (Dkt. No. 29-2), Exs. 2, 3.) Defendant represents that RevSpring also included a return envelope in the envelope in which the Payment Letter was sent. (Def.'s 56.1 ¶ 18.) The return envelope had one glassine window such that if the Coupon was inserted into it, the Harrisburg Address would be visible from the outside. (*Id.* ¶ 20; *see also*

Astheimer Decl. Exs. 4, 5.)  Defendant represents that while correspondence or payments should be sent to Defendant at the Harrisburg Address, if a debtor sends any correspondence or payments to the Oaks Address—RevSpring's return address—RevSpring would have promptly either forwarded the mail to Defendant as a courtesy or returned the mail to the United States Postal Service as return to sender "if there was any doubt regarding the intended address for the enclosed correspondence."  (Def.'s 56.1 ¶¶ 21, 24.)

Plaintiff claims that the Payment Letter confused him when he received it for several reasons.  First, Plaintiff was confused because he did not believe he owed Suez New York $1,448.28.  (Pl.'s 56.1 ¶ 8.)  Second, Plaintiff was confused because he did not understand how to dispute the debt, (*id.* ¶ 9); while the Payment Letter explains that written disputes should be mailed to Defendant's "office," Plaintiff was confused as to whether the Oaks Address or the Harrisburg Address was Defendant's office address, (*id.* ¶¶ 10, 12).  Plaintiff claims that he did not want to call Defendant to ask for clarification because he was afraid that Defendant "would not tell him about his right to dispute the [debt] but, instead, would try to get Plaintiff [to] agree to pay the [debt] that he believed to be in excess of the amount owed."  (*Id.* ¶ 13.)  Plaintiff also claims that he "was further concerned because [he] never heard of [Defendant] before [he] got the [Payment Letter] and there are so many scams going around these days, [that] [Plaintiff] did not know if this was a legitimate business or if someone was just trying to get [Plaintiff's] credit card or bank information by making [him] believe that [he] was paying a debt that [he] supposedly owed."  (Decl. of Naftali Schmelczer in Supp. of Pl.'s Mot. ("Pl. Decl.") ¶ 13 (Dkt. No. 36).)  Plaintiff never mailed any written correspondence or payments to either the Harrisburg Address or the Oaks Address, (Def.'s 56.1 ¶¶ 25–26; Pl.'s Counter 56.1 ¶¶ 25–26); instead, Plaintiff gave the Payment Letter to his attorney, (Pl. Decl. ¶ 14).

B.  Procedural History

Plaintiff filed his Complaint on March 18, 2020.  (*See* Compl.)  On June 2, 2020,
Defendant filed a pre-motion letter in anticipation of filing a motion to dismiss.  (Dkt. No. 7.)
After receiving Plaintiff's response, (Dkt. No. 9), the court held a pre-motion conference on
July 16, 2020 and adopted a briefing schedule, (*see* Dkt. (minute entry for July 16, 2020)).  On
July 31, 2020, Defendant filed its Motion To Dismiss.  (*See* Not. of Mot. (Dkt. No. 13); Mem. of
Law in Supp. of Mot. (Dkt. No. 14).)  On August 21, 2020, Plaintiff filed his Opposition, (*see*
Mem. of Law in Opp'n to Mot. (Dkt. No. 15)), and on August 28, 2020, Defendant filed its
Reply, (*see* Reply Mem. of Law in Supp. of Mot. (Dkt. No. 16)).  On February 1, 2020, the Court
issued an Opinion & Order denying Defendant's Motion To Dismiss.  (*See* Op. & Order ("MTD
Op.") (Dkt. No. 20).)  The Court relied heavily on its then-recent Opinion & Order on the motion
to dismiss filed in *Adler v. Penn Credit Corporation*, No. 19-CV-7084 (S.D.N.Y.), a nearly
identical action brought against the same defendant and involving the same counsel for both
parties, and ruled that "given the appearance of the Coupon and the lack of clear instructions in
the Payment Letter, . . . Plaintiff has stated a plausible claim under the FDCPA and that [the
Court] [could not] dismiss the Complaint at this early stage."  (*Id.* at 6–14.)

On February 12, 2021, Defendant filed its Answer, (*see* Answer (Dkt. No. 22)), and on
March 4, 2021, Defendant filed a letter proposing a briefing schedule for the Parties' anticipated
cross-motions for summary judgment, which Plaintiff did not dispute, (*see* Dkt. No. 24).  The
Court entered the Parties' proposed briefing schedule, (*see* Dkt. No. 25), and on April 9, 2021,
the Parties filed their cross-motions, Rule 56.1 submissions, and accompanying papers, (*see*
Def.'s Not. of Mot.; Def.'s 56.1; Def.'s Mem. of Law in Supp. of Def.'s Mot. ("Def.'s Mem.")
(Dkt. No. 30); Pl.'s Not. of Mot.; Pl.'s 56.1; Pl.'s Mem. of Law in Supp. of Pl.'s Mot. ("Pl.'s
Mem.") (Dkt. No. 35); Pl. Decl.).  On May 18, 2021, the Parties exchanged Opposition papers.

6

(*See* Def.'s Mem. of Law in Opp'n to Pl.'s Mot. ("Def.'s Opp'n Mem.") (Dkt. No. 42); Def.'s Counter 56.1; Pl.'s Mem. of Law in Opp'n to Def.'s Mot. ("Pl.'s Opp'n Mem.") (Dkt. No. 47); Pl.'s Counter 56.1.)  And on June 1, 2021, the Parties exchanged Replies.  (*See* Def.'s Reply Mem. of Law in Supp. of Def.'s Mot. ("Def.'s Reply Mem.") (Dkt. No. 50); Pl.'s Mem. of Law in Supp. of Pl.'s Mot. ("Pl.'s Reply Mem.") (Dkt. No. 51).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to award summary judgment, the [C]ourt must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia*, 17 F.4th at 355; *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical'

possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the

8

statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting FED. R. CIV. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (quotation marks omitted)).

Finally, "[w]here, as here, cross motions for summary judgment are filed, [courts] 'evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Byrne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010) (quoting *Hotel Emps. & Rest. Emps. Union v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002)); *see also Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 212 (2d Cir. 2021) ("When both parties have moved for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" (quoting *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017))).

B.  Analysis

Plaintiff brings two causes of action under the FDCPA based on Defendant's conduct as laid out above.  (*See* Compl.)  Defendant argues that it is entitled to summary judgment because there is no genuine dispute that: (1) Plaintiff lacks Article III standing to assert a claim under the FDCPA because Plaintiff fails to demonstrate actual injury, (*see, e.g.*, Def.'s Mem. 16–20); and (2) the Payment Letter is not deceptive as a matter of law, including because any potential

deceptiveness is immaterial, (*see, e.g.*, *id.* at 20–23). Plaintiff, in opposing Defendant's Motion, argues that he does have Article III standing, (*see* Pl.'s Opp'n Mem. 6–7), and that there is at least a genuine dispute as to whether the Payment Letter's deceptiveness is material, (*see id.* at 7–10.)

Alternatively, Plaintiff argues that he is entitled to summary judgment because the law of the case doctrine mandates that the Court, having determined at the motion to dismiss stage that Plaintiff plausibly alleged a violation of the FDCPA via the Payment Letter's alleged deceptiveness, maintain its position and grant judgment to Plaintiff. (*See* Pl.'s Mem. 7–10.) Defendant disputes the applicability of the law of the case doctrine here. (*See* Def.'s Opp'n Mem. 14–15.)

The Court addresses these arguments as necessary to resolve the instant Motions.

1. Standard for Constitutional Standing

Standing asks "whether the litigant is entitled to have the [C]ourt decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "This inquiry involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Id.*; *see also Alliance for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006) ("Although lack of Article III standing and subject matter jurisdiction are distinct concepts, Article III standing remains, as we have noted, a limitation on the authority of a federal court to exercise jurisdiction." (citation omitted)); *cf. Cortland St. Recovery Corp. v. Hellas Telecomms, S.a.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015) ("A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing." (quotation marks and citation omitted)). "Constitutional standing refers to the requirement that parties suing in federal court establish that a 'Case' or

10

'Controversy' exists within the meaning of Article III of the United States Constitution." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016).  Constitutional standing requires:

> (1) that the plaintiff ha[s] suffered an "injury in fact"—that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical,"; (2) that there is "a causal connection between the injury and the conduct" of which the plaintiff complains; and (3) that it is "likely . . . that the injury will be redressed by a favorable decision."

*Id.* (second alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.  And, the plaintiff's burden to establish constitutional standing changes over each successive stage of the litigation, commensurate with the changing standards on dispositive motion practice.  The Supreme Court has explained:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, we presume that general allegations embrace those specific acts that are necessary to support the claim.  In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.  And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

*Id.* (quotation marks, alterations, and citations omitted); *see also Carter v. HealthPort Techs. LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (same); *Denson v. Donald J. Trump for President, Inc.*, 530 F. Supp. 3d 412, 425 (S.D.N.Y. 2021) (same).[2]

---

[2] The question of Plaintiff's standing was not briefed at the motion to dismiss stage.  (*See generally* MTD Op.)  However, "[t]he question of standing is not subject to waiver," *United States v. Hays*, 515 U.S. 737, 742 (1995), and "because the question of standing goes to the constitutional limitations on the 'judicial Power of the United States,' which is limited to resolving 'Cases' or 'Controversies,' [courts] are entitled at any time . . . to delve into the issue of standing," even sua sponte, *Green Haven Prison Preparative Meeting of Religious Soc'y of*

As this Court very recently explained in more detail in ruling on the nearly identical cross-motions for summary judgment filed in *Adler*, the Supreme Court recently issued a decisive ruling on the issue of constitutional standing in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), which, along with its progeny, *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58 (2d Cir. 2021), make clear that plaintiffs who allege only a "procedural harm" lack standing. *See Adler v. Penn Credit Corp.*, No. 19-CV-7084, 2022 WL 744031, at *6–8 (S.D.N.Y. Mar. 11, 2022).

*TransUnion* involved a class of 8,185 plaintiffs who alleged that TransUnion, a credit reporting agency, had violated the Fair Credit Reporting Act ("FCRA") via its use of a system that had inaccurately flagged the plaintiffs' credit files as "potential match[es]" to persons identified as national security risks by the Treasury Department's Office of Foreign Assets Control ("OFAC"). *See id.* at 2200–02. The Supreme Court ultimately bifurcated the class, finding that the 1,853 class members whose inaccurately flagged credit reports had been disseminated to third parties had standing, because they had suffered a harm "associated with the tort of defamation," and the 6,332 class members whose inaccurately flagged credit reports were never disseminated did not have standing, because "[p]ublication is essential to liability in a suit for defamation." *Id.* at 2208–09 (quotation marks omitted). In short, the Supreme Court held: "No concrete harm, no standing." *Id.* at 2200; *see also Adler*, 2022 WL 744031, at *6 (discussing *TransUnion*).

---

*Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021) (quotation marks and citation omitted) (quoting U.S. CONST. art. III); *see also Carter*, 822 F.3d at 56 (explaining that the issue of standing "may be raised by a party, or by a court on its own initiative, at any stage in the litigation" (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 567, 571 (2004))).

*Maddox* involved two plaintiffs who alleged that the Bank of New York Mellon ("BNY Mellon") had failed to file their satisfaction of mortgage within 30 days of the plaintiffs' full satisfaction of their mortgage loan, as required under New York's satisfaction-of-mortgage statutes. *Maddox*, 19 F.4th at 59–60. The Second Circuit had initially ruled, in a pre-*TransUnion* opinion, that the plaintiffs' allegations had established an injury in fact sufficient to confer constitutional standing, since BNY Mellon's violation of the statutes "exposed [the plaintiffs] to a material risk of concrete harm, including the risk of not being able to borrow during the period of delay." *Id.* at 62 (quotation marks and alteration omitted). After this opinion, however, BNY Mellon filed a petition for rehearing and the Supreme Court decided *TransUnion*, leading the Second Circuit to withdraw its previous opinion and rule that because the mortgagor-plaintiffs failed to allege that they had actually suffered any reputational harm (including or in addition to any adverse credit reporting) or monetary harm during the lender-defendant's delay in recording the plaintiffs' satisfaction of the mortgage loan, they lacked standing. *Id.* at 64–65; *see also Adler*, 2022 WL 744031, at *7 (discussing *Maddox*).

District courts following *TransUnion* and *Maddox* assessing claims brought pursuant to both the FDCPA and the FCRA, "an analogous statute," *Adler*, 2022 WL 744031, at *8 (quoting *Sputz v. Alltran Fin., LP*, No. 21-CV-4663, 2021 WL 5772033, at *6 (S.D.N.Y. Dec. 5, 2021)), have uniformly held that absent specific evidence of reputational or monetary harm, plaintiffs lack constitutional standing, *see, e.g.*, *Zlotnick v. Equifax Info. Servs., LLC*, — F. Supp. 3d — , 2022 WL 351996, at *2 (E.D.N.Y. Feb. 3, 2022) (holding, in FCRA context, that "conclusory allegations" of "mental and emotional pain, anguish, humiliation, and embarrassment of credit denial," without more, cannot confer constitutional standing); *Williams v. Portfolio Recovery Assocs.*, Nos. 21-CV-5656, 21-CV-5662, 21-CV-5968, 21-CV-5970, 2022 WL 256510, at *3

(E.D.N.Y. Jan. 27, 2022) (remanding the plaintiffs' FDCPA claims due to lack of subject matter

jurisdiction, finding that by alleging only that the plaintiffs' inaccurate credit data (and related

information) was provided by the defendant to a third-party vendor, "no actual tangible harm"

was alleged by the plaintiffs); *Ciccone v. Cavalry Portfolio Servs., LLC*, Nos. 21-CV-2428, 21-

CV-3764, 2021 WL 5591725, at *3–5 (E.D.N.Y. Nov. 29, 2021) (dismissing the plaintiffs'

FDCPA claims where the plaintiffs "ha[d] not sufficiently alleged a concrete injury in fact

sufficient to confer Article III standing" based on a "mailing-vendor" theory, and noting that

"sister courts, within and without the Second Circuit, have dismissed FDCPA actions invoking

the mailing-vendor theory for lack of Article III standing"); *see also Adler*, 2022 WL 744031, at

*7–8 (reviewing cases in which courts have dismissed claims on standing grounds where the

plaintiffs failed to allege a concrete harm).

## 2.  Application

Here, Plaintiff has wholly failed to demonstrate that he suffered any concrete harm.

Plaintiff has not alleged, let alone demonstrated, that he suffered any monetary or reputational

harm, (*see generally* Compl.; Pl. Decl.); instead, Plaintiff claims only that the Payment Letter

caused Plaintiff to become "confused" and "concerned," (Pl. Decl. ¶¶ 12–13).  These claims are

insufficient to establish concrete injury sufficient to confer Article III standing.  *See Maddox*, 19

F.4th at 66 (finding, in assessing a motion to dismiss, that "[a] perfunctory allegation of

emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to

plausibly allege constitutional standing"); *Adler*, 2022 WL 744031, at *9 (finding, on summary

judgment, that statements in the plaintiff's declaration and deposition that the defendant's

conduct caused "confus[ion]" and "frustrat[ion]," which, in turn, caused "headaches," were

insufficient to establish concrete injury); *In re FDCPA Mailing Vendor Cases*, — F. Supp. 3d

— , 2021 WL 3160794, at *6 (E.D.N.Y. July 23, 2021) (explaining, on a motion to dismiss, that

"[the] plaintiffs cannot invoke the common law tort of intentional infliction of emotional distress" to establish a concrete injury to confer standing to bring FDCPA claim "because simply mailing a correction letter, even if erroneous, is a far cry from extreme and outrageous conduct" as required for the tort (quotation marks omitted)); *see also Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003) ("[B]are allegations by a plaintiff that the defendant's conduct made him 'depressed,' 'humiliated,' or the like are not sufficient to establish injury unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action."); *Crabtree v. Experian Info. Sols., Inc.*, No. 16-CV-10706, 2018 WL 1872112, at *3 (N.D. Ill. Apr. 17, 2018) (finding, on summary judgment, that the plaintiff's claims during his deposition that the defendant's alleged FCRA violation caused the plaintiff to experience "stress," "anxiety," and "embarrassment," were insufficient to establish injury sufficient to confer standing), *aff'd*, 948 F.3d 872 (7th Cir. 2020).

Accordingly, the Court finds that there is no genuine dispute of material fact that Plaintiff does not have Article III standing to pursue his FDCPA claims and thus, the Court lacks subject matter jurisdiction over this Action. *See, e.g.*, *Adler*, 2022 WL 744031, at *11 ("As [the] [p]laintiff has not demonstrated any concrete injury sufficient to support standing under the Second Circuit's precedent in *Maddox*, the [c]ourt lacks subject matter jurisdiction over this [a]ction."). Therefore, the Court need not address the substantive merits—or lack thereof—of Plaintiff's claims, as it must grant Defendant's Motion and deny Plaintiff's Motion. *See Hurley v. Tozzer, Ltd.*, No. 15-CV-2785, 2018 WL 1087946, at *2–3 (S.D.N.Y. Feb. 26, 2018) (granting the defendant's motion for summary judgment after finding that the plaintiff failed to allege facts

sufficient to confer standing); *Tabbs v. New Rochelle Neighborhood Revitalization Corp.*, No. 94-CV-4753, 1995 WL 546950, at *2 (S.D.N.Y. Sept. 14, 1995) (same).[3]

### III.  Conclusion

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.  The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 28, 34), enter judgment for Defendant, and close this case.

SO ORDERED.

Dated:   March 23, 2022
       White Plains, New York

KENNETH M. KARAS
United States District Judge

---

[3] Plaintiff initially sought to bring this Action on behalf of a class.  (*See* Compl. ¶¶ 112–18.)  However, Defendant noted in its brief that "[c]ounsel for Plaintiff represented during a conference on February 25, 2021 that Plaintiff is not pursuing his class action claims," (Def.'s Mem. 5 n.1), a representation that Plaintiff does not appear to dispute, (*see generally* Pl.'s Opp'n Mem.).  And in any event, "no class may be certified that contains members lacking Article III standing."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).